NANCY L. BISIENERE *VS.* MICHAEL A. BUCCINO.

No. 93-P-406.

Barnstable. April 4, 1994. - July 5, 1994.

Present: FINE, GILLERMAN, & GREENBERG, JJ.

*Divorce and Separation,* Alimony, Foreign judgment, Modification of
judgment, Attorney's fees. *Attorney at Law,* Compensation. *Contempt.*

A Probate Court judge properly, within her discretion under the authority
of G. L. c. 208, § 37, as amended by St. 1982, c. 642, § 2, declined to
apply provisions of Pennsylvania law providing that remarriage of a
party receiving alimony terminates the award of alimony (23 Pa. Cons.
Stat. Ann. § 3701 [e]), with respect to a 1986 divorce decree entered
in Pennsylvania, where both parties before the Probate Court, on com-
plaints for enforcement of the foreign decree and for contempt, were
domiciliaries of this Commonwealth. [751-752]
In an action for enforcement of a foreign (Pennsylvania) divorce judgment
and an action for contempt arising from the same circumstances, the
Probate Court judge properly awarded reasonable attorney's fees and
costs under G. L. c. 208, § 38, to the former wife (plaintiff). [752-753]
Evidence at a hearing on a complaint for contempt for failure to pay ali-
mony and counsel fees amply supported the judge's findings and conclu-
sion that the defendant had the ability to pay the amounts due under
the judgments. [753-754]

COMPLAINTS for modification of a foreign divorce judg-
ment and for contempt filed in the Barnstable Division of the
Probate and Family Court Department on August 6, 1987,
and January 17, 1990, respectively.

The cases were heard by *Shirley R. Lewis,* J.

*Richard D. Packenham* for the defendant.

*David E. Cherny (Cynthia M. Bourget* with him) for the
plaintiff.

GILLERMAN, J. The defendant appeals from a judgment regarding the enforcement of a Pennsylvania divorce decree[1] and a subsequent judgment finding him in civil contempt. The actions have been consolidated on appeal.

On July 3, 1991, the Barnstable Probate and Family Court (the trial court) entered two judgments from which the defendant filed timely notices of appeal. The first, a judgment of contempt entered on July 3, 1991, ordered the defendant to pay the plaintiff (1) $14,408.73 for child support arrearage and (2) $35,000 for attorney's fees and costs. The second, enforcement of a foreign decree, ordered payment of (1) $31,014.28 for periodic spousal support arrearage; (2) $8,140 for child support arrearage; and (3) $17,950 for miscellaneous payments. On January 28, 1992, the court found the defendant in contempt for failure to pay any portion of the total of $106,513.01.

The defendant has waived his appeals except as to the following: (1) that portion of the alimony arrearages that accrued after the plaintiff's remarriage in the amount of $24,400; (2) the award of $35,000 in counsel fees; and (3) the January 28, 1992, contempt judgment, but only insofar as it applies to the failure to pay these two sums, a total of $59,400. We conclude that there is no merit to the appeals of the defendant.

1. *Background.* We rely on the findings of the trial judge in sketching the events leading to this appeal.[2] The parties

---

[1]Four consolidated cases were before the trial court: a complaint by each of the parties for modification of child support; the plaintiff's complaint for contempt for nonpayment; and the plaintiff's complaint seeking enforcement of a foreign judgment.

We do not discuss the tangle of prior temporary support orders and matters regarding child visitation rights; they do not bear upon the issues presented by this appeal.

[2]Prior to the litigation in the Massachusetts courts, the defendant, in May, 1987, had filed a petition for individual bankruptcy in Federal Bankruptcy Court for the Southern District of Indiana, in an attempt, as found by the trial judge, to avoid enforcement of the divorce decree. The Bankruptcy Court deferred its decision on the dischargeability of the spousal support payments to the Pennsylvania trial court, which held that the payments were in the nature of alimony, and, therefore, not dischargeable. See

were married in Massachusetts in 1979 and divorced in November, 1986, in Pennsylvania by decree of the Susquehanna County Court of Common Pleas (the Pennsylvania trial court). The plaintiff and her child moved to this Commonwealth in March, 1986. At the time of the entry of the Pennsylvania judgment, the appellant had left his employ as a dentist and entered a two-year pediatric dentistry program in Indiana; he later moved to Massachusetts upon completion of his graduate studies in July, 1988. Both parties have continued to reside in Massachusetts, and as it appears from this record, they are domiciled here. There is no contention to the contrary.

The 1986 divorce decree, so far as material, granted physical custody of the couple's only child to the plaintiff, and provided that the defendant was to pay weekly child support of $100 beginning immediately and, upon completion of his graduate studies, weekly alimony of $200 for a period of five years.

2. *Effect of remarriage on alimony.* The plaintiff remarried on February 25, 1989. Under Pennsylvania law, remarriage automatically excuses an obligor from paying further alimony.[3] Relying on this provision, and citing *Homewood* v. *Homewood*, 11 Mass. App. Ct. 864 (1981), the defendant argues that the judge in this case, as matter of law, should have modified the Pennsylvania decree by relieving the defendant of his obligation to pay the post-remarriage portion of alimony arrears beginning March 3, 1989, and ending June 29, 1991, a sum of $24,400. We disagree.

*Homewood* arose under G. L. c. 208, § 35 (a Probate Court may enforce a foreign judgment for alimony), and we looked to the law of the foreign jurisdiction in deciding the extent to which we would enforce the foreign judgment. That case, however, was decided before the 1982 amendment to

_____

11 U.S.C. § 523(a)(5) (1988). This decision was affirmed on appeal by the Pennsylvania Superior Court and adopted by the Bankruptcy Court.

[3]23 Pa. Cons. Stat. Ann. § 3701(e) (Purdon 1991) provides in pertinent part: "Remarriage of the party receiving alimony shall terminate the award of alimony."

G. L. c. 208, § 37, see St. 1982, c. 642, § 2, which provides, in part, "that if both parties are domiciliaries of the commonwealth, then the court may modify and alter the foreign judgment [regarding alimony or support for children] in the same manner as it could have had the judgment, order, or decree been issued by the court . . . ." The effect of the 1982 amendment, so far as here material, was to grant to the Probate Court, in cases involving Massachusetts domiciliaries, authority to look to Massachusetts law in deciding whether to accept, reject or otherwise modify so much of any foreign judgment as the court, in its discretion, deems appropriate.[4],[5] Thus, *Homewood* was superseded by legislative enactment.[6]

Here the judge concluded that the "allegation that remarriage of a party terminates alimony in Pennsylvania does not apply in this case." That ruling is, in substance, a decision by the judge, acting well within her discretion, that the circumstances of the parties do not call for the modification of the Pennsylvania judgment solely because the plaintiff has remarried. This is consistent with Massachusetts law. See *Ziegler* v. *McKinlay*, 318 Mass. 765, 767 (1945) (remarriage does not require a finding that the wife is receiving support adequate to her needs). There is no basis for concluding that the judge's decision was arbitrary or capricious, and the Pennsylvania decree may be enforced under G. L. c. 208, § 35, in accordance with its terms and without regard to the Pennsylvania statute which, in this case, would limit the period of alimony.

3. *Attorney's fees.* The defendant attacks the trial judge's award of $35,000 for attorney's fees and costs incurred by the wife in the proceedings below. In determining the necessity and the amount of an award of attorney's fees pursuant to G. L. c. 208, § 38, the trial judge enjoys a considerable

---

[4]An exception is provided for provisions in foreign judgments regarding the division of marital assets.

[5]No argument is made that G. L. c. 208, § 37, as amended, is invalid.

[6]By applying the domiciliary law of the obligor we preclude due process concerns, and prevent forum shopping by the obligee. See generally Scoles & Hay, Conflict of Laws 15.32 - 15.38 (1984 & Supp. 1988).

degree of discretion. See, e.g., *Brash* v. *Brash*, 407 Mass. 101, 106 (1990). Moreover, G. L. c. 215, § 34A, creates a presumption in favor of an award of reasonable fees and costs for a successful party in a contempt action. See, e.g., *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. 176, 181 (1986), *S.C.*, 400 Mass. 272 (1987).

There was no abuse of discretion. The judge held an evidentiary hearing on the matter and grounded her findings of fact on affidavits, written submissions from counsel, and contemporaneous time and billing records. In addition to considering the factors deemed relevant in a determination of fees under § 38, see, e.g., *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933); *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 17 (1979), the judge's detailed findings were replete with references regarding the defendant's unrelenting attempts to avoid payment of support, and amply support the award.[7] "A defaulting spouse should know that noncompliance can be costly." *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. at 181.

4. *Contempt.* The defendant's final claim is that the judge erred in entering the January 28, 1992, judgment holding him in contempt for nonpayment of the post-remarriage alimony, totalling $24,400 (itself a contempt order) and $35,000 in counsel fees.[8] "In the usual case, in order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience. . . . In addition, the defendant must be found to have the ability to pay at the time the contempt judgment enters." *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340

---

[7]The judge found, inter alia, that, "as a result of the husband's refusal to pay child support as ordered, the wife and minor child suffered economic hardship, and without family aid, would have been unable to afford basic necessities," that the appellant's "attempts to block enforcement have been prolific and show willingness to spend monies on litigation rather tha[n] for the support of his child and former spouse," and that the defendant's 1990 financial statement was misleading and misrepresented his income and assets.

[8]The January 28, 1992, judgment found the defendant in contempt for arrears and payments totalling $106,513.01. He has waived appeal from the other underlying orders, which total $46,913.01.

(1990), *S.C.*, 30 Mass. App. Ct. 418 (1991). The defendant has narrowed the inquiry to whether the judge erred in concluding that he had the ability to pay.[9]

The defendant argues that his 1991 financial statement belies the court's determination of his ability to satisfy the judgments. The judge, who also presided over the trial of the underlying matters, found, inter alia, not only that the defendant's testimony lacked credibility, but also that his corporation's expenditures during the posttrial period contradicted his documentation reporting negligible income for the same period. She determined that the defendant enjoyed excellent income from July, 1988, through December, 1989 (earning $87,800 in 1989), at which time he voluntarily terminated his employment,[10] and that by the first day of trial, January 16, 1990, he had begun working as a pediatric dentist for his own professional corporation which provides him with an annual income of at least $100,000.

Far from being clearly erroneous, see *Matteson v. Matteson*, 23 Mass. App. Ct. 945, 945-946 (1986); Mass.R.Dom.Rel.P. 52(a), as amended (1984), the evidence adduced at the posttrial contempt hearing (and the trial itself) provides ample support for the judge's findings of fact, which in turn support her conclusion that "[the defendant] has misrepresented his income and manipulated his earning potential in an attempt to create an inability to pay the [j]udgments."

*Judgments affirmed.*

---

[9]In his closing argument at the November 7, 1991, hearing on the contempt judgment, defendant's counsel argued thus:

"There's certainly no grounds for contempt to issue, because as Your Honor knows, do we have an order? Yes, we do. Is the order clear? Yes, it is. Is the order paid? No, it isn't.

"So, we come down to the last criterion. Is there an ability to pay? No, there isn't."

[10]In her findings of fact and conclusions of law accompanying the July 3, 1991, judgments, the judge found that the defendant's termination was caused by his desire for more money and fewer hours, by his intention to engage in pediatric dentistry as an independent contractor, as well as by his refusal to enter into a written agreement with his employer.