THE JUDGE ROTENBERG EDUCATIONAL CENTER, INC., &
others[1] *vs.* COMMISSIONER OF THE DEPARTMENT OF
MENTAL RETARDATION (No. 4).

Bristol. November 5, 1996. - March 13, 1997.

Present: ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Department of Mental Retardation. Mental Health. Probate Court,* Guard-
ian, Incompetent person, Judicial discretion. *Guardian,* Incompetent
person. *Practice, Civil,* Intervention, Standing.

In a contempt action, a Probate Court judge did not abuse her discretion in
declining to appoint nine attorneys as next friends to certain disabled
parties to the litigation where the interests of those persons were
adequately represented in the contempt action and in the underlying
proceedings by guardians, a guardian ad litem, and the representative of
a certified class of plaintiffs of which they were members [478-480]; nor
did the judge abuse her discretion in denying the attorneys' motion to
intervene in the contempt action, where the attorneys had no legal rela-
tionship to the disabled parties other than representing them in
substituted judgment cases [480].

CIVIL ACTION commenced in the Bristol Division of the
Probate and Family Court Department on February 28, 1986.

A complaint for contempt, filed on September 3, 1993, was
heard by *Elizabeth O'Neill LaStaiti,* J., and motions for ap-
pointment as next friend and to intervene were also heard by
her.

The Supreme Judicial Court granted an application for
direct appellate review.

*Judith S. Yogman,* Assistant Attorney General, for the
Commissioner of the Department of Mental Retardation.

*Michael P. Flammia (Peter F. Carr, II,* with him) for the
Judge Rotenberg Educational Center, Inc.

*Eugene R. Curry* for the class of patients, parents and
guardians.

---

[1] Matthew L. Israel, executive director of The Judge Rotenberg
Educational Center (JCR); Leo Soucy, individually, and as parent and next
friend of Brendon Soucy; and Peter Biscardi, individually, and as parent
and next friend of P.J. Biscardi, both as representative of the patients at the
Behavior Research Institute, their parents, and guardians.

*C. Michele Dorsey* (*Paul A. Cataldo* with her) for the class of patients.

*Steven J. Schwartz* for individual patients.

LYNCH, J. This is an appeal from motions brought by "guardianship counsel" for patients at The Judge Rotenberg Educational Center, Inc. (JRC),[2] seeking to be appointed next friend[3] and to intervene in *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, *ante* 430 (1997).

Nine attorneys, who collectively refer to themselves as guardianship counsel, filed a motion which asked the judge to appoint them as next friend to patients they represent in substituted judgment cases.[4] Presuming to act as next friends, guardianship counsel then moved to intervene in the contempt action brought against the Department of Mental Retardation (department).[5] Both motions were denied. Guardianship counsel appealed and we granted application for direct appellate review. We conclude that the judge did not abuse her discretion.

The following facts are not in dispute for purposes of this appeal.[6]

---

[2]The Judge Rotenberg Educational Center, Inc. (JRC), was formerly known as the Behavioral Research Institute, Inc.

[3]In the past, courts distinguished between the terms "next friend" and "guardian ad litem." A "next friend" was a person other than a guardian who brought an action on behalf of an infant or incompetent person. Black, Infants — Next Friends — Actions, Settlements, and Attorneys' Fees, 34 Mass. L.Q. 19, 19-20 (1949). A "guardian ad litem" described a person appointed to defend or prosecute a suit on behalf of an incompetent person otherwise represented. *Id.* at 21-23. The distinction was only formal and the functions of the two representatives were really the same. See *N.O.* v. *Callahan*, 110 F.R.D. 637, 648 n.6 (D. Mass. 1986). Today, we use guardian ad litem and next friend interchangeably. See G. L. c. 201, § 34.

[4]Substituted judgment standard describes a legal proceeding to determine whether an incompetent person would choose treatment if competent to make such a decision. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 745-759 (1977). Guardianship counsel represent fifty-eight patients at JRC in the substituted judgment cases.

[5]See *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, *ante* 430 (1997), for more detail.

[6]The facts were taken from the record and the order denying guardianship counsel's motions.

The patients at JRC suffer from severe disabilities, including mental retardation, autism, and psychiatric disorders. Each patient has a permanent legal guardian, who is usually a parent. The guardian is responsible for the general care and control of his ward. See G. L. c. 201, § 6A. In addition, a Probate Court judge appointed a guardian ad litem to oversee the general welfare of all the patients.

The patients are members of a certified class of plaintiffs which consists of the patients at JRC, their parents, and guardians. The class was organized in 1986 to participate in an action brought by JRC against the department's predecessor, the office for children (OFC).[7] The judge certified the class after finding that the requirements of Mass. R. Civ. P. 23, 365 Mass. 767 (1974), were satisfied. Even though the class was represented by counsel, the judge also appointed separate counsel to represent the patients' interests within the class.

After a preliminary hearing on the 1986 action, the plaintiff class, JRC, and OFC entered into a court-approved settlement agreement. All parties to the action participated and signed the agreement, including the attorneys appointed to represent the patients' interests within the class.

In 1993, JRC and the patients, their parents, and guardians brought a contempt action against the department for allegedly violating the settlement agreement.

*Discussion.* The threshold question for us to decide is whether the judge abused her discretion by declining to appoint guardianship counsel as next friend. Guardianship counsel contend that the judge erred because the patients were not adequately represented in the contempt action. Specifically, guardianship counsel allege that the potential for conflict between the patients and their guardians required the judge to appoint a next friend. We disagree.

The decision to appoint a guardian or next friend rests within the sound discretion of the judge. See *Strange* v. *Pow-*

[7]The office for children (OFC) was the State regulatory agency responsible for licensing JRC in 1986. That function was later transferred to the Department of Mental Retardation.

424 Mass. 476                                            479

Judge Rotenberg Educ. Ctr., *v.* Commissioner of the Dep't of Mental Retardation (No. 4).

*ers,* 358 Mass. 126, 136 (1970); *Ryan* v. *Cashman,* 327 Mass. 677, 680 (1951); *N.O.* v. *Callahan,* 110 F.R.D. 637, 649 (D. Mass. 1986). Rule 17 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 763 (1974), reads as follows:

> "Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."[8]

Under this rule, a judge has the discretion to appoint a next friend when it appears that an incompetent person is not adequately represented. *N.O.* v. *Callahan, supra* at 649. *Developmental Disabilities Advocacy Ctr., Inc.* v. *Melton,* 689 F.2d 281, 285 (1st Cir. 1982). See *Matter of Moe,* 385 Mass. 555, 563 (1982); *Ryan* v. *Cashman, supra* at 680; *Buckingham* v. *Alden,* 315 Mass. 383, 388-389 (1944); *Mansur* v. *Pratt,* 101 Mass. 60, 61 (1869). A next friend is not required where there is a duly appointed guardian, unless it is clear that the interests of the guardian and the ward conflict. See *Gardner* v. *Parson,* 874 F.2d 131, 140 (3d Cir. 1989); *N.O.* v. *Callahan, supra; Developmental Disabilities Advocacy Ctr., Inc.* v. *Melton, supra.* See also *Buckingham* v. *Alden, supra* at 389; *Mansur* v. *Pratt, supra* at 61. Here, the judge did not err in finding that the patients were adequately represented.

Each patient had a legal guardian. The guardians were involved in both the settlement agreement and the contempt action. The motion judge found: "At all times, the [p]arents [were] aware of BRI's program and have demonstrated a strong commitment to the welfare and best interests of the [patients]." Courts are reluctant to appoint a next friend when there is a duly appointed representative. See *Mansur* v. *Pratt, supra* at 61; *Developmental Disabilities Advocacy Ctr., Inc.* v. *Melton, supra* at 285.

---

[8]Rule 17 (b) of Massachusetts Rules of Civil Procedure, 365 Mass. 763 (1974), mirrors Fed. R. Civ. P. 17 (c) (1996).

The patients were members of the certified plaintiff class. The class joined the contempt action on behalf of all class members. Under Mass R. Civ. P. 23 (a), a class may not bring an action on behalf of the class members unless "the representative parties will fairly and adequately protect the interests of the class." The motion judge concluded the class, which originally was certified in 1986, should still be joined because "[t]he questions of law or fact common to all members of the [c]lass continue to be the same as they were in 1986 and apply to the [c]lass as a whole." Moreover, the patients had separate counsel to ensure their interests were adequately represented within the class. The judge noted, "[the attorneys who represent the patients] continue to effectively represent the [patient] members of the [c]lass directly and independently of the [p]arents authority as [p]arents, [g]uardians and [n]ext [f]riends." The judge considered the direct representation adequate to protect the patients from any potential conflict with the other class members.[9]

Guardianship counsel allege that patients and guardians could disagree on aversive treatment decisions. These decisions, however, are scrutinized in substituted judgment proceedings and were not at issue in the contempt action. In addition, the guardian ad litem was appointed to recognize potential and actual conflicts between the parents and the patients' interests.

In sum, the patients were represented by their guardians, the plaintiffs, and the guardian ad litem. The judge did not abuse her discretion in finding that the patients' interests were adequately protected.

Having concluded that the judge properly denied the motion to be appointed next friend, it is unnecessary to discuss the motion to intervene. Guardianship counsel's relationship with the patients was limited to substituted judgment cases. Because guardianship counsel had no other legal relationship with the patients, they had no standing to bring the motion to intervene. *Hirshson* v. *Gormley*, 323 Mass. 504, 506-507 (1948). See *Developmental Disabilities Advocacy Ctr., Inc.* v. *Melton, supra* at 285.

---

[9]The motion judge stated, "direct representation of the [patients], independent of any [g]uardian or [n]ext [f]riend authority, is considered . . . important in protecting the [patients] from potential conflict with the interests of the [p]arents and [g]uardians."

The Probate Court judge's denial of the two motions is affirmed.

*So ordered.*