## DAVID J. RUML *vs.* DORIANE W. RUML.

Nos. 97-P-1179 & 98-P-0298.

Worcester. May 5, 2000. - November 21, 2000.

Present: KASS, LENK, & DUFFLY, JJ.

*Contempt. Practice, Civil,* Contempt. *Probate Court,* Divorce, Findings by judge. *Parent and Child,* Child support. *Divorce and Separation,* Child support, Division of property. *Trust,* Assets of trust.

In a contempt proceeding arising out of a divorce action, the judge correctly adjudged the husband in contempt for failure to pay child support and to provide health insurance as ordered, where there was no error in the judge's conclusion that the husband had adequate financial resources to pay his obligations. [503-505]

In a divorce proceeding, the judge's order, mailed to the husband's attorney after a hearing on the wife's motion at which both the husband and his attorney were present, that precluded the husband from removing or appointing trustees or from exercising any power of appointment with respect to the income or principal of the trust, supported a judgment of contempt against the husband for his violation of the clear terms of the order, where his attorney's knowledge of the order, of which the husband acted to avoid notice, was properly imputable to the husband. [505-507]

In a divorce proceeding, the denial of the husband's motion for a writ of protection upon his reentry into the Commonwealth, based on the risk of his arrest for failure to comply with associated judgments of contempt, did not render the husband "unavailable" so as to permit the transcript of his testimony given at the contempt hearing to be admissible as prior recorded testimony at the divorce trial from which the husband had voluntarily absented himself. [507-509]

In a divorce proceeding, there was no error in the judge's incorporation of contempt findings in his divorce findings where the earlier findings were relevant to the subsequent proceedings. [509]

Where a husband had reserved broad powers of appointment over trust assets, the assets were subject to equitable distribution pursuant to G. L. c. 208, § 34, and a Probate Court judge committed no error in directing the husband to distribute those assets to the wife. [509-512]

In a divorce proceeding, the judge's denial of the husband's motion to appoint an attorney or guardian ad litem for the three children was not an abuse of discretion. [512-513]

In the circumstances of a divorce proceeding in which the husband was found in contempt of the judge's order for temporary child support, the judge did

not err in ruling that the wife had not acted improperly in using modest sums from the children's separate trust accounts to pay for basic living expenses. [513-514]

In the circumstances of a divorce proceeding, the judge's failure to award the husband his personal property was not plainly wrong. [514]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on October 25, 1994.

The case was heard by *John J. Moynihan*, J., and complaints of contempt, filed on April 5 and April 23, 1996, respectively, were heard by him.

*Burton Chandler* for David J. Ruml.

*Michael P. Angelini* for Doriane W. Ruml.

DUFFLY, J. This is an appeal by a husband, David J. Ruml (husband), from a judgment of divorce nisi. We consider this appeal together with the husband's appeal from two contempt judgments entered during the pendency of the divorce proceedings.

In connection with the divorce judgment, the husband's primary contention is that the trial judge lacked the power to transfer to the wife all of the corpus and accumulated income in an inter vivos trust, of which the husband is neither a trustee nor beneficiary, because the wife as a former spouse was no longer a beneficiary, and the trustees were not made parties to the divorce action. In connection with the contempt judgments, the husband raises several issues, most notably whether a party may be held in contempt for failing to abide by an order which was sent to his attorney, the knowledge of which was attributed to the husband. We affirm all three judgments of the Probate and Family Court.

1. *Background.* The judgments appealed from arise out of the following circumstances. The husband and Doriane W. Ruml (wife) were married in Rhode Island on June 27, 1970. By the time of their separation in October, 1994, they had three sons, born on October 30, 1977, October 24, 1981, and May 22, 1990. During the course of the marriage, the husband acquired a master's degree in business administration and became a successful and affluent businessman. The parties owned their own homes and expensive cars (during these proceedings, the husband drove a BMW and a Porsche); the children attended private schools; and the family belonged to a country club. The

husband occupied various financial positions in the insurance and banking industries, eventually becoming an executive at a bank in Arizona where his income reached its apex, $320,000 for 1993, including salary and a bonus.[1] His ascent required sacrifices. The husband changed jobs with some frequency in the later years of the marriage in order to take advantage of better opportunities located in different cities throughout the country, while the wife took up the slack at home. In 1985, after ten years with a Worcester insurance company, the husband changed jobs and the parties relocated to Dallas, Texas. Eight months later, the husband took a job in Los Angeles, California; in 1990 he began work for a bank in San Diego, California; in 1992 his work took him to Cleveland, Ohio. During that seven-year period, the wife remained in Dallas with the children, and the husband commuted to and from work, generally, although not always, coming home on weekends. The wife, who had left her part-time job in a bookstore in order to relocate, continued to work at low-paying jobs requiring no specialized skills, in addition to bearing the brunt of the responsibilities for rearing the children and managing the household.

In June, 1992, the parties relocated their primary residence to Holden, where they purchased a home. The husband continued to commute to Ohio. With the youngest of their three children then two years of age, the wife did not resume employment outside the home following that move. Beginning in November, 1992, when he became an executive for a bank in Phoenix, the husband commuted between Massachusetts and Arizona. This arrangement continued until October, 1994, when the husband left his wife and children and moved into a condominium in Scottsdale, Arizona, which he purchased with his sister.[2] The wife and the three children remained in the marital residence in Massachusetts and were living there at the time of the trial.

---

[1] In addition, the parties enjoyed access to funds in the David J. Ruml Family Irrevocable Trust (family trust). This trust, which is the subject of the husband's appeal, was established by him in 1989 with $600,000 which he received from trusts settled by his parents. At the time of the divorce, the trust had funds in the amount of 1.1 million dollars.

[2] He did not live in the condominium with his sister, to whom he paid rent in the amount of $1,200 per month. The Probate Court judge found that "[t]he Husband lives at this location with a woman who makes no financial contribution to its upkeep and whom the Husband described as a person with whom he had a romantic relationship until the summer of 1995 and [who] is now a house guest."

On October 25, 1994, the husband filed a complaint for divorce pursuant to G. L. c. 208, § 1B, alleging that an irretrievable breakdown of the marriage had occurred. He requested that custody of the children be awarded to the wife, and that the marital assets be distributed in accordance with G. L. c. 208, § 34.[3]

2. *The contempt judgments.* Two judgments of contempt, both dated September 10, 1996, were entered against the husband on separate complaints for contempt filed by the wife. An evidentiary hearing on both complaints took place on July 19, 1996, and the husband testified and was cross-examined.[4] On May 20, 1997, eight months after issuing the judgments of contempt, the Probate Court judge rendered separate findings of fact and conclusions of law. The husband makes the general claim concerning both judgments that the judge lacked authority to issue findings of fact once the husband had filed his notice of appeal because, although he had requested such findings, he subsequently filed a motion to revoke his earlier request. There is no merit to this claim. Although Mass.R.Dom.Rel.P. 52(a), as amended (1987), provides that "[i]n actions tried upon the facts without a jury, . . . the court shall *upon written motion . . .* find the facts specially" (emphasis added), there is nothing in this rule that precludes a judge from issuing findings of fact in connection with a contempt proceeding, after being notified that a party has taken an appeal from that judgment, even though no party has requested that such findings be made. We do not discourage a practice that assists the parties and the court in understanding fully the basis for a trial judge's decision, and the courts have, at times, required findings even when no party has requested them. See *Rice* v. *Rice,* 372 Mass. 398, 402-403 (1977); *Custody of Vaughn,* 422 Mass. 590, 600 (1996).[5]

a. *Failure to pay child support.* On July 21, 1995, a judge of

---

[3]The wife filed an answer and counterclaim, also seeking a divorce pursuant to G. L. c. 208, § 1B. The record does not show any action taken with respect to this counterclaim.

[4]The contempt hearing took place following the commencement, on April 8, 1996, of trial on the husband's complaint for divorce, which continued on January 6, 1997, March 20, 1997, April 4 and 11, 1997, and June 4, 1997. The husband returned to Arizona after testifying at the contempt hearing on July 19, 1996, and never returned to participate in the divorce trial.

[5]Nor are we precluded from considering findings issued well after the notice of appeal has been filed, as the husband suggests. Even the sixty-day provision in Mass.R.Dom.Rel.P. 52(a) ("[w]here the court enters judgment

the Probate and Family Court entered temporary orders which, among other things, granted physical custody of the children to the wife and visitation to the husband, and ordered the husband to pay to the wife $5,400 per month in child support and to maintain medical insurance for the benefit of the wife and children. The judge in his May 20, 1997, decision found the husband in contempt for having failed to pay $27,000 in child support and to provide health insurance as ordered. The husband's defense at trial and on appeal is his inability to pay. He argues that he should not be held in contempt because he lost his job in November, 1994; at the time of the July, 1996, hearing he still was receiving no income from his employment; and he had, by February, 1996, depleted the $300,000 severance package that he received when his employment terminated.

The trial judge found that since losing his job in November, 1994, the husband had been "selective in his job search as to salary," further limiting his search to States other than Massachusetts. As of the date of the hearing, the husband was employed by a business he had purchased on May 17, 1996, with his father and sister, paying $15,000 for a thirty-five per cent interest in a partnership that owns a majority interest in that business. At the time of this purchase, the husband gave his $20,000 Porsche to the business.

The funds to purchase the husband's share of the business came from an account (established before he received the $300,000 severance package) containing $50,000, held by one of his attorneys, which was also the source of $17,000 in legal fee payments, and a $15,000 payment to his father on account of an undocumented loan. The business purchase on May 17, 1996, and the loan repayment on May 16, 1996, took place two and three days prior to the scheduled date of the contempt hearing. From another bank account he withdrew $21,000 to repay several undocumented loans to family and friends; that

pursuant to G. L. ch. 208, sec. 34 it shall issue findings of fact and conclusions of law thereon within sixty [60] days of the filing of a notice of appeal") is not mandatory, but directory. *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 83 (1985). "While we would prefer that written findings of fact be made before entry of . . . orders," *King* v. *King*, 373 Mass. 37, 40 (1977), if after issuing orders, but before the record has been assembled and the appeal has been docketed in an appellate court, the judge sua sponte makes written findings of fact, these should be included as part of the record on appeal. Here, findings issued over two weeks prior to the entry of the notice of assembly of the record on June 6, 1997.

account had contained $21,500 in February, 1996. On a financial statement filed at the time of hearing, the husband claimed to have assets, in addition to the equity in the marital residence, valued at $169,327.00.[6] The husband continued to maintain health insurance for himself, as well as maintaining $5,000 in a medical savings account which he set aside to cover his own uninsured medical expenses and anticipated deductibles. He provided no benefits of that kind for his wife or children.

On the basis of detailed findings, amply supported by the evidence, the judge concluded that the husband had "financially abandoned his children" while at all times since the July 21, 1995, order he had access to adequate financial resources from which he could have paid his support obligation and provided health insurance. *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990), *S.C.*, 30 Mass. App. Ct. 418 (1991). See *Furtado* v. *Furtado*, 380 Mass. 137 (1980); *Bisienere* v. *Buccino*, 36 Mass. App. Ct. 749, 753-754 (1994). There was no error in the trial judge's refusal to accept at face value the results of the husband's manipulation of his assets, which he undertook to appear to be divested of financial resources, hoping thereby to justify his failure to pay support. We affirm the judgment of contempt.[7]

b. *Appointment of additional trustees.* On April 8, 1996, following the first of six days of trial on the husband's complaint for divorce (conducted over the course of a year and a half), the parties were heard on the wife's motion seeking to preclude the husband from taking steps to remove or appoint any trustee of the David J. Ruml Family Irrevocable Trust (family trust) and from exercising any power of appointment with respect to the income or principal of the family trust.[8] The judge after the hearing informed the parties and their attorneys that he was taking the motion under advisement, and he allowed it the next

---

[6]These listed assets did not reflect funds in the family trust. See note 1, *supra*.

[7]The hearings on the contempt complaints and the divorce complaint were all conducted before the same judge. Because we also uphold the judge's property division, which he arrived at in part based on the husband's failure to pay child support, we conclude that, upon the assignment to the wife of all of the principal and accumulated interest in the family trust, the order requiring the husband to pay $27,000 in support arrears shall be satisfied.

[8]As we have previously noted, the husband was the settlor of the family trust, which he established in 1989 for the benefit of his spouse and children. Michael L. Timm, the sole trustee and a mutual friend of the husband and

day. A copy of that order was sent to counsel for both parties. The husband left the hearing on April 8, 1996, and from his hotel room, called two longtime friends intending, as he acknowledged at trial, to appoint them as additional trustees before the judge's order issued. He also drafted letters, which he mailed to his friends on April .11, 1996, after having his signature notarized on that date. In the letters, he referred to provisions of the family trust, stating that in those provisions he had reserved to himself the power to select trustees, and that written notice "such as this" was required to exercise that power.[9]

The Probate Court judge determined that the husband had intentionally evaded notification of the court's April 9, 1996, order and had proceeded to appoint two new trustees on April 11, 1996,[10] in wilful violation of that order. The effect of that violation was to deny the wife access to the trust funds for needed child support. The husband was adjudged in contempt and was ordered to revoke the appointment of the two new trustees and to pay the wife's attorneys' fees.

The husband does not claim that the order was unclear, nor does he contest that his steps to appoint the additional trustees would constitute a violation of that order had he known of it. *Larson* v. *Larson*, 28 Mass. App. Ct. at 340 ("in order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience"). His argument is that he cannot be in held in contempt because he had no actual knowledge of the order at the moment he made the appointments.

The Probate Court judge found that the husband made no effort to contact his attorney after April 8, 1996, to determine the court's decision on his wife's motion.[11] The husband was represented by an attorney specifically in connection with these

wife, had the authority to disburse funds to provide for the health, support, maintenance, or education of the spouse and children.

[9]Pursuant to Article I of the family trust agreement, the power to appoint new trustees "can be exercised by a written, acknowledged instrument placed in the files of the trust."

[10]We reject the husband's claim that the judge erred in not finding that the appointment was effective April 8, 1996.

[11]The husband argues that he first learned of the judge's order on April 15, 1996, during a conversation with Michael Timm, the original trustee of the family trust. Even if we agreed that the husband was not in contempt until he received actual notice of the order, the result in this case would not be

proceedings; both the husband and his attorney were present at the hearing on the wife's motion and were informed that an order on the motion would issue; an order then issued and was sent to the husband's attorney. In these circumstances, the attorney's knowledge of the order is imputed to the husband. *Quinn* v. *Hintlian*, 4 Mass. App. Ct. 805 (1976). See Restatement (Second) of Agency § 268 (1958) ("[A] notification given to an agent is notice to the principal if it is given . . . to an agent authorized to receive it"). Cf. *Flynn* v. *Wallace*, 359 Mass. 711, 718 (1971). When an attorney and his client are present at or have been notified of a hearing, the subject of which may result in an order imposing restrictions on the client, both the attorney and his client will be deemed to have knowledge of the order, even if the attorney fails to take steps to determine that the order had in fact issued. The deliberate act of an attorney or the attorney's client to avoid notice of an order, knowledge of which is readily accessible, constitutes a calculated attempt to evade the court's authority and cannot be condoned. "[A] party may not 'shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received.' " *Commonwealth* v. *Munafo*, 45 Mass. App. Ct. 597, 602 (1998), quoting from *Commonwealth* v. *Delaney*, 425 Mass. 587, 592 (1997), cert. denied, 522 U.S. 1058 (1998). The judge did not err in determining that the husband was in contempt of the Probate Court's April 9, 1996, order.

3. *The divorce judgment.* Although present on April 8, 1996, the first day of the divorce trial, the husband did not take the witness stand on that date, nor did he testify on any subsequent trial days in connection with the divorce. The trial ended on June 4, 1997. The husband's sole testimony came during the July 19, 1996, hearing on the complaints for contempt. On January 2, 1997, the husband filed a motion for writ of protec-

---

different. The husband took no steps to remove the newly appointed trustees after he learned of the order. The wife's civil complaint for contempt was filed on April 26, 1996, and was not heard until nearly three months later. "Unlike its criminal counterpart, civil contempt is not punitive but 'intended to achieve compliance with the court's orders for the benefit of the complainant.' " *Commonwealth* v. *Rape Crisis Servs. of Greater Lowell, Inc.*, 416 Mass. 190, 193 (1993), quoting from *Furtado* v. *Furtado*, 380 Mass. at 141. The wife was not seeking to punish the husband for his earlier violation of the order but to coerce his compliance. The husband had ample opportunity, once he actually learned of the order, to comply with it.

tion, in which he sought to preclude his restraint, arrest, or incarceration should he enter the Commonwealth, either for the purpose of preparing for his divorce trial or when appearing at any hearing in connection with the divorce complaint. The motion was denied. Further days of trial on the divorce complaint were thereafter conducted in the husband's absence but with his attorney participating. A judgment of divorce nisi then entered. The trial judge issued findings of fact and conclusions of law, in which he incorporated findings he had made in connection with the contempt judgments.

a. *Use of transcripts from the contempt hearing.* Having failed to comply with the contempt judgments, the husband argues that he was at risk for arrest if he returned to Massachusetts; because his motion for a writ of protection was denied, he was unable to appear and testify at the divorce proceedings. In lieu thereof, he sought to admit in evidence the transcript of his testimony given at the contempt hearing. We reject the husband's claim that it was error not to admit the transcript.

Although an exception to the hearsay rule permits the admission of prior recorded testimony by an unavailable witness in certain circumstances,[12] the husband's self-imposed exile does not meet the requirements of the exception.[13] Absence of a witness from the jurisdiction is by itself insufficient to establish

---

[12]Those circumstances are "where the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980). See *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986). See also Liacos, Massachusetts Evidence § 8.7, at 489 (7th ed. 1999).

[13]Neither of the contempt judgments included an order for incarceration in the event of the husband's failure to comply (the provision on each printed judgment form providing for incarceration was lined out). The argument that the husband might, at some future point, have become subject to process for his failure to comply with the contempt judgments, or that a period of incarceration might at some future date be ordered, is speculation. The judge did not abuse his discretion in denying the husband's motion for a writ of protection. A writ of protection, which is rarely granted, "issues to protect a party from arrest in *other suits* which have been or may be instituted whereby his attendance while his case is on trial might be greatly embarrassed or wholly prevented." *Ginn* v. *Almy*, 212 Mass. 486, 495-496 (1912) (emphasis added). In *Ginn*, the court noted that "neither the defendant's property nor his person were exempt from legal process, by the use of which payment of the amount the plaintiff might recover against him could be secured," *id.* at 496,

unavailability that justifies the admission of testimony given at a prior proceeding. See *Commonwealth* v. *Ross*, 426 Mass. 555, 558-559 (1998). See also *Ibanez* v. *Winston*, 222 Mass. 129, 130 (1915); *Commonwealth* v. *DiPietro*, 373 Mass. 369, 380-383 (1977); Proposed Mass.R.Evid. 804(a).

b. *Incorporation of contempt findings.* There was no error in the judge's incorporation of the contempt findings in his divorce findings. Findings of fact made in an initial legal proceeding may, in an appropriate case, be incorporated in a judge's findings of fact in a subsequent and related proceeding involving the same parties if the earlier findings are relevant and material to the subsequent proceeding. *Adoption of Simone*, 427 Mass. 34, 43-44 (1998). This is particularly so where, as here, the facts incorporated were not only the product of full litigation but were "essential to the judgment in that action." *Rudow* v. *Fogel*, 376 Mass. 587, 591 (1978). See, e.g., *Keller* v. *O'Brien*, 420 Mass. 820, 821 (1995), *S.C.*, 425 Mass. 774 (1997). See also *Matter of Keenan*, 314 Mass. 544, 548 (1943).

c. *Distribution of family trust assets pursuant to G. L. c. 208, § 34.* Following the trial, a divorce judgment nisi entered, pursuant to which the husband was granted a divorce. Based on the detailed findings of fact and conclusions of law, in which the Probate Court judge considered all of the relevant factors set forth in G. L. c. 208, § 34, the husband was directed to assign to the wife all of the corpus and accumulated income of the family trust. In addition, the wife was awarded one-half of the value of the husband's retirement account and pension interests, and the marital home and its contents (the wife was to assume responsibility for the mortgage). The husband was allowed to retain any interest he had in the condominium and the business. The wife was awarded sole legal and physical custody of the children. No child support obligation was imposed upon the husband "at this time"[14]; he was ordered to maintain medical insurance benefits for the children and for the wife, so long

and concluded that the defendant was not deprived of the opportunity to appear and give testimony at the hearing simply because he preferred not to expose himself to the chance of arrest. We think these same principles hold true in the circumstances of this case, where the protection sought is from possible service of process in a contempt action arising during the pendency of, and in connection with, a divorce action between the same parties.

[14]The judgment provides that such a claim might be made "upon motion." After entry of a divorce judgment, the mechanism for a change in the orders is via a *complaint* for modification. G. L. c. 208, § 28, as inserted by St.

as she was eligible. The judge concluded, on the basis of his findings, which were amply supported by the evidence, that there should be an unequal distribution of assets,[15] because the husband had financially and emotionally abandoned his family, had failed to appear in court and offer evidence from which the judge could accurately assess the marital estate and its value, had failed to abide by past orders of support, and had exhibited his intention not to do so in the future.

In his appeal, the husband makes no argument that the disproportionate division of assets ordered by the trial judge is unwarranted on the undisputed facts of this case.[16] His imbricated claims on appeal relating to the trust assets are that

1993, c. 460, § 61 ("Upon a complaint after a divorce, . . . the court may make a judgment modifying its earlier judgment"). In limited circumstances, modifications may also be made pursuant to a complaint for contempt. *Williams* v. *Massa*, 431 Mass. 619, 636-637 (2000). *Kennedy* v. *Kennedy*, 17 Mass. App. Ct. 308, 312 (1983).

[15]Assets in the family trust had, at the time of trial, a value of approximately $1,100,000. The parties also jointly owned the marital home which was valued at $280,000, and encumbered by a mortgage of $187,000. Other assets included the personal property and two cars in the wife's possession, having a total value of $30,100; the husband's retirement and pension accounts, having a total value of $179,417; bank accounts in the husband's name totaling $8,674; the husband's two cars, having a total value of $38,000 (including the Porsche which he gave to his business); his interest in the condominium, which he purchased with his sister for $235,000, and for which he provided ten per cent of the down payment; and his interest in the business he owns with his sister and father, the value of which could not be determined from the evidence. We note, however, the husband's testimony that in 1997, the first full year of operation, he anticipated gross business income of $600,000. The husband's claimed liabilities in the amount of $25,903.68 include legal fees totaling $21,668.68. The wife's liabilities were found to be approximately $68,266, including $50,000 in legal fees.

[16]Such a claim would have been fruitless. A Probate Court judge has broad discretion to make an equitable distribution of assets, including assets that one party receives by virtue of gift, devise, or trust. *Rice* v. *Rice*, 372 Mass. at 400. *Williams* v. *Massa*, 431 Mass. at 624. *Earle* v. *Earle*, 13 Mass. App. Ct. 1062, 1063 (1982). *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 372 (1985). The husband was obligated to continue to support his wife of over twenty-five years and their children. The wife, who was forty-eight years old at the time of trial, with no specialized, marketable skills or recent employment history, had sole responsibility for the care, nurturing, support, and education of the three children after the separation, and, during the marriage, had made virtually all of the noneconomic contributions and had contributed to the family all of her modest income when she was employed. She has income needs in excess of $80,000 per year in after tax dollars, exceeding those of the husband. Aside from the equity in the home and her automobile and trust assets, she

the corpus of the family trust was not a marital asset subject to division under G. L. c. 208, § 34, because the husband was neither a trustee nor a beneficiary. As such, he could not be directed to make a distribution. Only the named trustees could do so, but they had not been made parties to the proceeding. Even had the court power to direct that a distribution be made, it could not be to the wife because, on divorce, the wife was no longer a "spousal" beneficiary under the trust agreement.[17]

It is well established that trust assets are marital assets subject to distribution pursuant to G. L. c. 208, § 34. Inherited assets, including an interest in trust property established by one spouse's parents, may comprise part of a marital estate for purposes of possible division under G. L. c. 208, § 34. *Williams* v. *Massa*, 431 Mass. 619, 625 (2000). See *Lauricella* v. *Lauricella*, 409 Mass. 211, 214 (1991); *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 30-31 (1992). As was stated in *Sullivan* v. *Burkin*, 390 Mass. 864, 872 n.6 (1984), "[w]ithout suggesting the outer limits of the meaning of the word 'estate' under G. L. c. 208, § 34, as applied to trust assets over which a spouse has a general power of appointment at the time of a divorce, after this decision there should be no doubt that the 'estate' of such a spouse would include trust assets held in a trust created by the other spouse and having provisions such as the trust in the case before us." The husband in *Sullivan* v. *Burkin* executed a deed

---

would have a negative net worth. In light of the husband's failure to support his family, and his persistent and aggressive efforts to portray himself as unable to do so, the trial judge correctly assumed that the husband could not be relied on to provide support in the future. The judge's findings indicate that he was cognizant of the parties' respective contributions, which made them equal partners in the marital enterprise. In making a disproportionate distribution, the judge sought to assure that the wife would be able to support herself and the children in something resembling their accustomed lifestyle without relying on the husband. In the unusual circumstances of this case, he was warranted in doing so. "[General Laws] c. 208, § 34, . . . empowers probate judges incident to a divorce proceeding to employ broad discretion . . . in reaching a fair financial settlement and in dealing with property and its equitable division." *Newman* v. *Newman*, 11 Mass. App. Ct. 903, 903 (1981), citing *Rice* v. *Rice*, 372 Mass. at 401. See *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 922 (1982).

[17]The husband relies on Article II(A) of the family trust agreement, which provides that the trustee "may pay to any one or more then living members of a group consisting of the spouse of Settlor and the issue of Settlor, such net income and principal of the trust as Trustee may determine is necessary for each such person's health, support, maintenance, or education in the standard of living to which that person has been accustomed."

of trust under which he transferred real estate to himself as sole trustee, with income and principal payable to him; he retained the right to revoke the trust at any time, and on his death the successor trustee was to pay over principal and undistributed income to two people, neither one his wife. The husband here, while not a trustee, reserved for himself, as settlor, broad powers, including the power of appointment over any or all of the trust principal and income.[18]

We hold that in light of the broad powers of appointment reserved by the husband in the trust assets, such assets were subject to equitable distribution pursuant to G. L. c. 208, § 34. Cf. *State St. Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633, 637 (1979). We conclude that the trial judge committed no error when he directed the husband to distribute these assets to the wife. We reject the claims based on the arguments that the trustee(s) have not been made parties to this action and that the wife is not an intended beneficiary of the trust.[19]

d. *Other claims.* The husband argues that the judge erred

[18]Article II(B) of the family trust agreement provides:

"Settlor shall have the following power of appointment with respect to all or any part of the income and/or principal of the trust:

"A special power of appointment in favor of any one or more of a group consisting of charities, the spouse of Settlor, the issue of Settlor, and persons other than Settlor, his creditors[,] Settlor's estate, and creditors of Settlor's estate, exercisable from time to time by deed or deeds during Settlor's life or by will at Settlor's death. Settlor may appoint outright or in trust, select the trustees, create new powers of appointment in others, establish administrative powers, create life interests or other limited interests in some with future interests in others, create revocable or irrevocable interests, impose lawful conditions on such new powers of appointment, impose lawful spendthrift provisions, and in general appoint in any lawful manner; provided always, however, that no appointment by Settlor shall benefit directly or indirectly one not an object of the power and that nothing herein shall be construed as authorizing him to appoint to himself, his creditors, his estate, or creditors of his estate."

[19]We also note that the spendthrift clause in the trust agreement does not preclude the distribution of trust assets to the wife. See *Lauricella* v. *Lauricella*, 409 Mass. at 216 (husband's present beneficial interest in trust property, subject to a spendthrift clause, may be distributed pursuant to G. L. c. 208, § 34); *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 371-372 (husband's remainder interest in a trust, subject to a spendthrift clause and the condition of survivorship, was divisible under G. L. c. 208, § 34). In addition, we disagree that the wife is no longer a "spouse" as defined by the trust; the par-

when he denied the husband's motion to appoint either an attorney or guardian ad litem for the children to protect their interests in the trust's assets. The decision to appoint a guardian ad litem or next friend for a minor rests within the sound discretion of the judge and will be overturned only upon a showing of abuse of discretion by the judge. See *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 4)*, 424 Mass. 476, 478-480 (1997). "A next friend is not required where there is a duly appointed guardian, unless it is clear that the interests of the guardian and the ward conflict." *Id.* at 479.

Marital property may not be awarded to children in a divorce proceeding, *Johnson* v. *Johnson*, 425 Mass. 693, 694-695 (1997), but an award of property must "consider the present and future needs of the dependent children of the marriage." G. L. c. 208, § 34, as inserted by St. 1989, c. 559. The wife, as sole legal and physical custodian for the children, is charged with the responsibility to provide for their present and future financial needs. No evidence was presented that the wife had acted in a manner adverse to the best interests of her children or that she would cease to support them following the divorce. To the contrary, the judge found that the wife had nurtured the children and had made every effort to maintain their quality of life despite having, since February, 1996, received no financial support from the husband. The Probate Court judge did not abuse his discretion when he denied the husband's motion to appoint an attorney or guardian ad litem for the children.

The husband next asserts that the Probate Court judge erred when he ruled that funds which were being held in separate trusts for two of the children and funds which were being held in a bank account for the third child could be used by the wife to pay for living expenses.[20] The judge found that, because the wife was not receiving child support and was precluded access

---

ties were not divorced at the time the judge directed the husband to distribute the trust assets to the wife.

[20]The trust for the oldest son was established on December 8, 1978, by the husband's mother, with the wife designated as the trustee, and the oldest son as the beneficiary. As of March, 1996, this trust had a value of approximately $207,069.

The trust for the middle son was established on September 13, 1982, by the husband's mother. The wife was the designated trustee, and the named beneficiary was the parties' middle son. As of March, 1996, this trust had a

to the assets in the family trust, she withdrew $6,000 from the oldest son's trust, $4,000 from the middle son's trust, and $2,000 from the youngest son's account. He found that the wife used these funds to pay for the family's living expenses, including the mortgage, medical insurance premiums, heating and electric bills, telephone bills, and car insurance premiums, and to make a partial payment toward the purchase of a computer for the children.

The judge correctly concluded that the wife's expenditures were for the intended beneficiaries' comfort, support, education, and maintenance, as provided by the trust terms, and as contemplated by G. L. c. 201A, § 14(a), as inserted by St. 1986, c. 362, § 1 ("[a] custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor"), and were proper.

The husband claims that the judge abused his discretion by failing to award the husband his personal property, including clothes, shoes, and diplomas. A judge has broad discretion in dealing with the division of property incident to a divorce, including items of a personal nature. See G. L. c. 208, § 34. In light of the husband's refusal to come into the Commonwealth for the divorce trial, his failure to maintain contact with his family, and his failure to support his family, the judge's decision was not plainly wrong.

*Judgments affirmed.*

---

value of approximately $165,351.

Pursuant to the Uniform Transfers to Minors Act, G. L. c. 201A, the wife was the custodian of a bank account at First Manhattan Co. for the parties' youngest son. As of March, 1996, this account had a value of approximately $77,018.