NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-906                                            Appeals Court
13-P-686
13-P-1385


CURT F. PFANNENSTIEHL vs.  DIANE L. PFANNENSTIEHL
(and two consolidated cases[1]).


Nos. 13-P-906, 13-P-686, & 13-P-1385.

Norfolk.      February 11, 2014. - August 27, 2015.

Present:  Kafker, C.J., Cypher, Kantrowitz, Berry, & Fecteau,
JJ.[2]


Divorce and Separation, Division of property, Findings,
     Attorney's fees.  Trust, Spendthrift provision.  Contempt.
     Practice, Civil, Findings by judge, Contempt, Stay of
     proceedings.



     Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on September 22, 2010.


_____

     [1] Both involving the same parties.

     [2] These consolidated cases were initially heard by a panel
comprised of Justices Kantrowitz, Berry, and Fecteau.  After
circulation of the opinion to the other justices of the Appeals
Court, the panel was expanded to include Chief Justice Kafker
and Justice Cypher.  See Sciaba Constr. Corp. v. Boston, 35
Mass. App. Ct. 181, 181 n.2 (1993).  Justice Kantrowitz
participated in the deliberation on this case while an Associate
Justice of this court, prior to his retirement.

The case was heard by Angela M. Ordoñez, J.; a complaint for contempt, filed on January 24, 2013, was also heard by her; and a motion to stay enforcement of the judgment pending appeal was considered by her.

A motion to stay the proceedings pending appeal was considered in this court by Vuono, J.

Robert J. O'Regan for the husband.
Jillian B. Hirsch for the wife.

BERRY, J.   The main issue presented -- in what is the lead of three appeals[3] related to these divorce proceedings -- concerns the decision of a judge of the Probate and Family Court (probate judge or judge) to include in the marital estate, for purposes of the G. L. c. 208, § 34, division, the husband's interest in a multi-million dollar trust established by the husband's father (the 2004 trust[4]).  The principal of the 2004 trust was, in the main, associated with funding from the family's operation of corporations that own and operate for-profit colleges, including Bay State College in Massachusetts and Harrison College in Indiana.[5]  The husband claims as error

---

[3] The three consolidated appeals are from the amended judgment of divorce, the judgment of contempt, and the single justice's order denying the motion for a stay.

[4] The legal title of the 2004 trust is the "Frederick G. Pfannenstiehl 2004 Trust."

[5] These two colleges are owned by Bay State Educational Corporation and Educational Management Corporation, corporations controlled by the husband's family.  Bay State Education Corporation does business as Bay State College in Massachusetts. Educational Management Corporation does business as Harrison

the assignment of $1,333,047 of the trust value to the wife and the requirement that the husband pay $48,699.77 monthly for twenty-four months to effectuate the division of assets set forth in the amended judgment.[6]

As to this issue, the husband, citing a spendthrift provision in the subject trust, argues that the 2004 trust value and income therefrom were isolated, were not within the marital

---

College which is a postsecondary higher education institution with thirteen to fourteen campuses in Indiana and surrounding States and which, at the time of trial, had an enrollment of approximately 6,000 students. See note 13, infra.

[6] Other issues presented in the three consolidated appeals include the husband's arguments that he was denied his right to trial before an impartial magistrate; that many of the judge's findings of fact are plainly wrong; that the judge's award of attorney's fees to the wife was an abuse of discretion; that the judgment finding him in contempt was in error; and that an order denying his motion for a stay should be set aside.

In a cross appeal the wife argues that the award of attorney's fees was insufficient; that the judge erred by not considering future distributions from the 2004 trust as income in calculating support; and that the judge should have included the husband's hypothetical claim for breach of fiduciary duty in the marital estate.

We address these other issues, after first turning to the principal issue involving the 2004 trust. In summary, as to these various other issues, we determine with respect to the major claims that (1) the wife's attorney's fees were warranted; (2) the contempt finding against the husband is not sustainable; and (3) the stay which ordered no further payments to the wife pending appeal shall be vacated. The husband's claim that his case was not decided by an impartial magistrate lacks any merit.

estate, and, therefore, should have been excluded from consideration under G. L. c. 208, § 34.[7]

This spendthrift isolation theory, as detailed infra, is advanced notwithstanding that the 2004 trust had made distributions to the husband -- including an outright $300,000 in 2008 followed by 2009-2010 monthly payments of several thousand dollars -- all of which were distributed from the 2004 trust to the husband, his twin brother, and a sister. Only as to the husband did these substantial monthly payments end, and they did so precisely on the eve of the husband's divorce filing. In contrast to the finale for the husband, the 2004 trust payments continued to the husband's brother and sister. Specifically, there was a cutoff of the monthly payments to the

---

[7] General Laws c. 208, § 34, as amended by St. 2011, c. 124, § 2, states:

"In fixing the nature and value of the property, if any, to be so assigned, the court, after hearing the witnesses, if any, of each of the parties, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony . . . In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage . . . . contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."

husband of from $20,000 to $65,000 in August, 2010, one month before the commencement of divorce proceedings in September, 2010. This cutoff, of course, stands in stark contrast to the continuing pattern of distributions to the husband's two other siblings and undermines the husband's theory of exclusion of the 2004 trust.

For the reasons stated herein, we conclude that the record in the case, including but not limited to trust documentary exhibits, provides telling evidence that the spendthrift provision is being invoked as a subterfuge to mask the husband's income stream and thwart the division of the martial estate in the divorce. A chart set forth infra shows a spendthrift scheme that is virtually empty of purpose except as a form of insulation to inclusion and valuation in the divorce process. On this issue, we look to settled trust law, which holds that the mere statement of a spendthrift provision in a trust does not render distributions from a trust, such as this one, immune to inclusion in the marital estate for G. L. c. 208, § 34, calculations.

In addition to our determination that the probate judge correctly included the 2004 trust in the marital estate, we further conclude that the judge appropriately divided the

marital estate by allocating sixty percent to the wife and forty percent to the husband.[8]

1. Divorce appeal. a. Factual background. The following is taken from the case record of the divorce. The parties were married in February, 2000, and last lived together in August, 2010. The parties have two children. At the time of trial, the son was eleven years old, and the daughter was eight years old. Both children have special needs. The son has been diagnosed with dyslexia and Attention Deficit Disorder (ADD) and attends a private school that specializes in teaching students with dyslexia. The daughter has been diagnosed with Down syndrome and has had significant medical and developmental issues throughout her life. The daughter currently is treated by nine specialists for her medical needs and attends a specialized school that provides her with physical, occupational, and speech therapy. She requires "around the clock supervision."

i. The husband. At the time of the 2012 trial, the husband was forty-two years old. He had attended college for

---

[8] It is more than worthy of note that in this complicated, intensely litigated case with eight days of trial, this judge did a masterful job in marshalling the facts and compiling the record in a memorandum of decision spanning forty-two pages, including 344 fact findings (which often provide clarity in a maze of seemingly nontransparent financial arrangements) and accompanying legal analysis and rationale. That memorandum decision provides an insightful backdrop to the eight appellate briefs of 295 pages and the 4,769 pages of record appendices submitted to this court in the three separate appeals.

one and one-half years. He has dyslexia and ADD but is otherwise in good health. The husband comes from a family of substantial means. Those substantial family holdings are principally connected to the family's running of for-profit colleges. The tuition income from these for-profit educational businesses was substantial, and, indeed, was a main source of funding for the 2004 trust.

In addition, the husband was employed as an assistant bookstore manager for one such university and earned about $170,000 per year. The judge found that a "normal incumbent" in this assistant bookstore manager position would earn roughly $50,000 to $60,000 per year. The judge found that this handsome and inflated salary flowed from the husband's "familial relations."[9]

Between 2008 and 2010, the husband received tax-free distributions from the 2004 trust as follows: $300,000 received in one payment in 2008, $340,000 received in six payments in 2009, and $160,000 received at a rate of $20,000 per month for the first eight months of 2010. Payments from the trust ceased

---

[9] These same familial relations provided the husband the opportunity to take a four-year leave of absence from his employment between 2007 and 2011 to pursue carpentry and building work. During his leave of absence, the husband earned only modest income from his carpentry work and continued to receive his full salary as an assistant bookstore manager. The husband has also earned modest amounts as an on-call firefighter and a snowplow driver.

after August, 2010, the month preceding the husband's filing for divorce.

In 2010, the husband's gross income, including the trust distributions of $160,000, amounted to approximately $350,000. At the time of trial, given the cessation of the trust income, the husband's gross annual income had diminished to $180,000. The husband has substantial opportunities to acquire capital assets and income in the future.

ii.  The wife.  The wife is forty-eight years old and is generally in good health.  She is a college graduate who served as an officer in the United States Army Reserves for eighteen years.  The wife left the military in 2004, just two years short of the twenty years of service that would have entitled her to a military pension.  The decision to retire came after pressure from the husband and his family following the birth of the parties' daughter, who, as noted, is medically challenged.  The wife currently works as an ultrasound technician one day each week and is paid approximately forty-six dollars per hour.  At the time of trial, her gross yearly income from this position was $22,672.

The wife was the primary homemaker and caretaker of the two children throughout the entirety of the marriage. She has devoted extraordinary amounts of time and effort addressing the children's (and particularly the daughter's) personal, medical,

educational, and extracurricular needs and activities. The judge found that the wife "currently spends most of her time caring for [the parties' daughter]." The daughter's needs are ongoing, and she will likely reside with the wife for numerous years to come. Although the wife has some opportunity to acquire assets in the future, her opportunity is limited considerably by her care of the parties' daughter.

b. The family lifestyle as interconnected to the 2004 trust distributions. During the marriage, the family was able to enjoy an upper middle class lifestyle. This expansive lifestyle was financially attributable, in large measure, to the distributions to the husband from the 2004 trust, the beneficence of the husband's father, and the rather large salary of $170,000 which the husband received as the assistant bookstore manager. The probate judge did "not credit [the husband's] testimony that he lacked knowledge concerning where he spent the 2004 Trust distributions as well as whether he paid taxes on said distributions."

c. The amended judgment. The pertinent parts of the judgment, as amended and dated August 13, 2012, are summarized as follows.

Including the husband's interest in the 2004 trust, the judge calculated the total value of the combined marital estate at $4,305,380. The judge divided assets in the marital estate

(including the husband's interest in the 2004 trust) by allocating sixty percent to the wife and forty percent to the husband. In the final calculations including that division, and certain other assets, the wife received total assets valued at $2,328,688 and the husband received total assets valued at $1,976,692.

The judge found that the total value of the 2004 trust was $24,920,217.37. The judge calculated the husband's one-eleventh interest[10] in the trust at $2,265,474.31. The wife was allocated a portion of the 2004 trust worth $1,133,047.79. The husband retained a portion of the 2004 trust valued at $1,132,426.52.

To effectuate the asset transfers to the wife, the judge ordered the husband to make twenty-four monthly payments to the wife in the amount of $48,699.77.[11]

In other provisions of the amended judgment, the wife was designated the primary custodial parent of the children, subject to the husband's parenting schedule. The husband was ordered to pay child support in the amount of $1,100 per week, an amount to which the parties stipulated. Neither party was awarded alimony.

---

[10] The husband's interest was formulated on the basis of the current number of beneficiaries.

[11] These $48,699.77 payments were the subject of the wife's contempt action against the husband, see part 2, and were stayed during a part of the pendency of this appeal, see part 3.

The judge also ordered the parties to maintain life insurance policies for the benefit of the children and, based on the judge's findings concerning the husband's obstructionist conduct at trial, ordered the husband to contribute $175,000 towards the wife's attorney's fees.  As we have indicated, both the husband and the wife have appealed.

d.  The 2004 trust.  i.  General principles.  At the outset, we set forth the general principles that bear upon the authority of the probate judge to determine whether to include an asset or an interest in the marital estate.  In D.L. v. G.L., 61 Mass. App. Ct. 488, 492-493 (2004), we stated:

> "General Laws c. 208, § 34, defines the scope of a trial judge's discretion to assign interests in the marital estate to the wife or husband, based on a number of specified factors. . . .  Separate from the division of assets within the estate is the question whether certain assets properly are considered a part of the estate.  In making the determination of what to include in the estate, the judge is not bound by traditional concepts of title or property.  'Instead, we have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of § 34.'  Baccanti v. Morton, 434 Mass. 787, 794 (2001), quoting from Lauricella v. Lauricella, 409 Mass. 211, 214 (1991).  'When the future acquisition of assets is fairly certain, and current valuation possible, the assets may be considered for assignment under § 34.' Williams v. Massa, 431 Mass. 619, 628 (2000)."

D.L. v. G.L., supra, quoting from S.L. v. R.L., 55 Mass. App. Ct. 880, 882-883 (2002).[12]

---

[12] Whether a party's interest in trust property is part of the marital estate for purposes of § 34 has been said to present

In this case, we determine that the judge acted properly in including the husband's interest in the 2004 trust in the marital estate, which we further describe below, and appropriately valued and divided the trust assets.

ii. Trust background. We outline the only parts of the 2004 trust material to these appeals. The 2004 trust is an irrevocable spendthrift trust that was established by the husband's father. The 2004 trust holds shares of stock in the husband's family-controlled private corporations, which corporations, in turn, own and operate for-profit colleges.[13] Among additional assets and liabilities in the 2004 trust, there are promissory notes owed to the husband's father, and life insurance policies.[14]

---

a question of law. See Lauricella v. Lauricella, 409 Mass. at 213 & n.2; D.L. v. G.L., supra at 493-494. The instant case also presents intensive and supported fact finding on the part of the probate judge concerning the distributions from the trust leading up to the time of the divorce and thereafter.

[13] The 2004 trust shares are comprised of thirty-six percent of the outstanding shares (i.e., currently 3,600 shares) of Educational Management Corporation and fifteen percent of the outstanding shares (i.e., 1,569 shares) of Bay State Education Corporation. The 2004 trust holds three life insurance policies on the life of the husband's father (which are intended to pay any estate tax in the event of his death) and a cash account.

[14] Thus, as of the date of trial, the husband's father had been paid close to $7 million on a promissory note from the trust. At the time of trial, approximately $5,378,701 in principal and interest were still owed to the husband's father pursuant to the promissory note and a later amended promissory note. The trust is also obligated to pay the premiums on the

There are two trustees of the 2004 trust.  The husband's twin brother is one trustee.  This brother is also vice-president and secretary of Educational Management Corporation and president and treasurer of Bay State College, which is owned by Bay State Education Corporation and holds stock in that particular for-profit college (see note 5, supra).  The brother and the father serve as officers and directors of the corporations.  Thus, in these corporate roles, the brother and father decide and control what dividends are to be paid to the trust, impacting the funding to the 2004 trust, and, in turn, the 2004 trust principal and income available for distributions.

The second trustee was ostensibly an outside trustee, but this trustee was also inextricably interconnected with, and aligned with, the husband's family.  This trustee is a lawyer, and he and his law firm have represented the husband's father and his businesses since 1972.  His law firm also represents the trustees of the 2004 trust.  At trial, this trustee's testimony manifested not only hands-off administration, but also little, if any, scrutiny of the 2004 trust distributions; indeed, this

---

three life insurance policies held by the trust (annual payments amount to $435,000 per year).  Although not obligated to do so, the trust makes payments to the husband's father for taxes owed on income in addition to the principal and interest owed on the amended promissory note.

trustee appeared unaware of the level of, or timing of, the distributions.

To use understatement: the record shows the 2004 trust was not administered impartially by the two trustees. To the contrary, the judge expressly found that as the divorce began, "the proverbial family wagons circled the family money." We have described some record facts that support the judge's graphic image and findings, but there are far more. Among other facts, the judge cited the cessation before the divorce of distributions to the husband and continuing pattern of monthly distributions to the husband's brother and sister; the judge also considered the unusual testimony of the supposedly independent cotrustee concerning the ongoing payments to the brother and sister. This trustee said that the reason why the distributions to the husband were discontinued was out of a concern that the intent of the donor (the husband's father) to keep funds within the family might be violated if distributions continued. This statement was not indicative of independence.

iii. <u>Chart showing cutoff of 2004 trust distributions to the husband</u>. In calculating the 2004 trust distributions, the judge added the numbers as follows: between April, 2008, and August, 2010, the husband received $800,000 from the trust and, since April, 2008, the husband's brother received $1,133,207 and his sister received $1,180,000.

The following chart reveals how the spigot from the 2004 trust of substantial monthly income distribution was deliberately and abruptly shut off for the husband <u>alone</u> as the divorce proceedings were in the immediate offing. (Again, to be noted is that this chart does not include the $300,000 outright distribution in 2008.)

| Date | Trust Funding from College Income | Trust Funding from Investment Account | Brother Distributions from Trust | <u>HUSBAND</u> Distributions from Trust | Sister Distributions from Trust |
|------|------|------|------|------|------|
| Jul-07 | 1,584,000 | 95,000 | | | |
| Aug-07 | | | | | |
| Sep-07 | | 30,000 | | | |
| Oct-07 | | 130,000 | | | |
| Nov-07 | | | | | |
| Dec-07 | | | | | |
| Jan-08 | | 90,000 | | | |
| Feb-08 | | | | | |
| Mar-08 | | | | | |
| Apr-08 | | 90,000 | | | |
| May-08 | | | | | |
| Jun-08 | (1,332,000) | | | | |
| Jul-08 | 1,332,000 | 95,700 | | | |
| Aug-08 | | | | | |
| Sep-08 | | | | | |
| Oct-08 | | | | | |
| Nov-08 | | | | | |
| Dec-08 | | | | | |
| Jan-09 | | 95,000 | | | |
| Feb-09 | | | | | |
| Mar-09 | | | | | |
| Apr-09 | | 100,000 | | | |
| May-09 | | 225,000 | (65,000) | (65,000) | (65,000) |
| Jun-09 | | 280,000 | (85,000) | (85,000) | (85,000) |
| Jul-09 | | 265,000 | (60,000) | (60,000) | (60,000) |
| Aug-09 | | 90,000 | (30,000) | (30,000) | (30,000) |
| Sep-09 | | 150,000 | (50,000) | (50,000) | (50,000) |
| Oct-09 | | 140,000 | | | |
| Nov-09 | 135,000 | | (50,000) | (50,000) | |
| Dec-09 | 135,000 | | | | |
| Jan-10 | 135,000 | | (20,000) | | (20,000) |
| Feb-10 | 135,000 | | (20,000) | (40,000) | (20,000) |
| Mar-10 | 135,000 | | (20,000) | (20,000) | (20,000) |
| Apr-10 | 877,500 | | | (20,000) | (20,000) |
| May-10 | 135,000 | | | (20,000) | (20,000) |
| Jun-10 | 135,000 | | (13,207) | (20,000) | (20,000) |
| Jul-10 | 225,000 | | (20,000) | (20,000) | (20,000) |
| Aug-10 | 225,000 | | (20,000) | (20,000) | (20,000) |
| Sep-10 | 225,000 | | (20,000) | | (20,000) |
| Oct-10 | 225,000 | | (20,000) | | (20,000) |
| Nov-10 | 225,000 | | (20,000) | | (20,000) |
| Dec-10 | 225,000 | | (20,000) | | (20,000) |
| Jan-11 | 253,127 | | (20,000) | | (20,000) |
| Feb-11 | 253,127 | | (20,000) | | (20,000) |
| Mar-11 | 253,127 | | (20,000) | | (20,000) |
| Apr-11 | 253,127 | | (20,000) | | (20,000) |

| May-11 | | | (20,000) | | (20,000) |
|---|---|---|---|---|---|
| Jun-11 | | | (20,000) | | (20,000) |
| Jul-11 | 253,127 | | (20,000) | | (20,000) |
| Aug-11 | 253,127 | | (20,000) | | (20,000) |
| Sep-11 | 253,127 | | (20,000) | | (20,000) |
| Oct-11 | 107,207 | | (20,000) | | (20,000) |
| Nov-11 | 107,207 | | (20,000) | | (20,000) |
| Dec-11 | 107,207 | | (20,000) | | (20,000) |
| Jan-12 | 154,735 | | (20,000) | | (20,000) |
| Feb-12 | 154,735 | | (20,000) | | (20,000) |
| Mar-12 | 154,735 | | (20,000) | | (20,000) |

It is clear that this cutoff of the distributions from the 2004 trust only to the husband and just on the eve of divorce was a deliberate manipulation to erase a major component of the husband's annual income and to silence his interest in the trust -- for a convenient time while the divorce was ongoing. Significantly, the judge found it likely that the husband would receive distributions from the 2004 trust after the divorce was over. The judge found as follows. "The Court finds that the suspension of trust distributions occurred because [the husband] filed for divorce and the Trustees deemed it risky to give [the husband] money that might be shared with [the wife], a non-beneficiary." The husband now seeks to cover this manipulation by invoking the spendthrift provision.[15]

iv. <u>The spendthrift provision</u>. This pattern of distribution -- substantial distributions before the divorce, then zero as the divorce loomed -- belies the husband's invocation of a spendthrift provision to exclude the 2004 trust

---

[15] Notwithstanding the significant assets and distributions, there were no annual accountings by the trustees of the 2004 trust.

from his marital estate.  The spendthrift provision provides as follows:

> "Neither the principal nor income of any trust created hereunder shall be subject to alienation, pledge, assignment or other anticipation by the person for whom the same is intended, nor to attachment, execution, garnishment or other seizure under any legal, equitable or other process."

It is well established by law that a trust, even one with a spendthrift provision, may be included in a marital estate for purposes of division under § 34.  "Common sense and basic concepts of fairness support the notion that ownership of a valuable asset demonstrates ability to pay without further inquiry as to whether payment can be enforced directly against the asset. . . .  The law does not require that an obligor be allowed to enjoy an asset --such as a valuable home or the beneficial interest in a spendthrift trust -- while he neglects to provide for those persons whom he is legally required to support."  Krokyn v. Krokyn, 378 Mass. 206, 213-214 (1979).  Accord Lauricella v. Lauricella, 409 Mass. at 216.  "[W]e have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of § 34."  Id. at 214.  Thus, in Lauricella it was held that a trust with a spendthrift clause was includable under § 34.  See Davidson v. Davidson, 19 Mass. App. Ct. 364, 371 (1985) (remainder interest subject to valid

spendthrift clause included in estate for property division under § 34).

    v.  <u>The ascertainable distribution standard in the 2004 trust</u>.  We also consider, as did the probate judge, whether in this case the trust is subject to an ascertainable standard which supports the inclusion of this asset in the marital estate.  The income stream was not too remote or speculative, nor purely discretionary.

    As to the ascertainable standard for distribution, the 2004 trust provides in art. first, par. A, a common distribution standard tied to such life matters as support, welfare and maintenance.

> "Until the division of the Trust into separate shares pursuant to paragraph B below, the Trustee shall pay to, or apply for the benefit of, a class composed of any one or more of the Donor's then living issue such amounts of income and principal as the Trustee, in its sole discretion, may deem advisable from time to time, whether in equal or unequal shares, <u>to provide for the comfortable support, health, maintenance, welfare and education of each or all members of such class</u> . . . .  In the exercise of such discretion, the Trustee may take into account funds available from other sources for such needs of each beneficiary . . . .  At the end of each taxable year, any net income which is not disposed of by the terms of this paragraph shall be added to the principal of the trust estate."  (Emphasis added.)

    Thus, the husband had a present enforceable right to distributions from the 2004 trust.  That factor, among others, was appropriately assessed by the probate judge in weighing the value and manner of the total asset division to the wife.

Significantly, the judge found it likely that the husband would receive distributions from the 2004 trust after the divorce was over.

In these respects, the 2004 trust differs from wholly discretionary trusts, with no distribution standards regarding support, health, maintenance, welfare, or education. Thus, we are not persuaded by the husband's citation to D.L. v. G.L., 61 Mass. App. Ct. 488, because the trust at issue in that case involved payments that were wholly discretionary, and, consequently, the trust was not includable in the marital estate. (In D.L., supra, neither income nor principal had ever been distributed from the subject trust to the husband, a marked contrast to this case where there were serial monthly distributions to the husband.)

Reduced to essentials, it is clear that the 2004 trust has an ascertainable standard pursuant to which the trustees, as fiduciaries, were obligated to, and actually did, distribute the trust assets to the beneficiaries, including the husband, for such things as comfortable support, health, maintenance, welfare, and education. Illustrative of ascertainable standards which govern trust distributions, see, e.g., Marsman v. Nasca, 30 Mass. App. Ct. 789, 795 (1991), quoting from Woodbury v. Bunker, 359 Mass. 239, 243 (1971) (language directing trustees to pay beneficiary such amounts as they "shall deem advisable

for his comfortable support and maintenance" has been interpreted to set an ascertainable standard, namely to maintain life beneficiary "in accordance with the standard of living which was normal for him before he became a beneficiary of the trust").  See also Dana v. Gring, 374 Mass. 109, 117 (1977); Dwight v. Dwight, 52 Mass. App. Ct. 739, 744 n.5 (2001) ("the trustee would be under a duty to provide income from the trust to the husband should the trustee determine, upon inquiry, that the husband needed it").

Given these ascertainable standards, the husband's interest in the trust is vested in possession, with a presently enforceable right to the trust distributions to support his lifestyle during his lifetime including for maintenance, welfare, and education (and including educational funds needed for the special needs of the two children).  Indeed, the pattern of distributions up to the time of the divorce filing (with the husband regularly receiving distributions until the eve of the divorce filing) reflects distributions from the 2004 trust that fall within these ascertainable standards.

Finally, it cannot be gainsaid that the substantial income distributions for support, maintenance, and welfare from the 2004 trust were woven into the fabric of the marriage.  The 2004 trust distributions were integral to the family unit, and the family depended upon these trust distributions monies to meet

their routine expenses and to maintain their standard of living. It was mostly the large cash distributions from the 2004 trust which allowed the husband and wife to live an upper middle class lifestyle, own an expensive home, supplement the expenses for their special needs children's services, and live well beyond the husband's inflated bookstore income of $170,000. The judge found the husband had expenses of $3,557 per week and wife had expenses of $2,910. Their combined annual expenses are $336,284. As the judge found, such high-level expenses could only have been met with augmentation from the 2004 trust distributions. Notably, the trust distributions were all tax-free, so the disposable income was significant. In short, the family lifestyle and expenses, as a matter of financial mathematics, could not have been met on the husband's after-tax net income without the 2004 trust income stream as woven into the marriage fabric.

Furthermore, upon termination of the distributions from the 2004 trust, the husband will receive a share equal to his siblings. The husband therefore has a vested beneficial interest subject to inclusion in the marital estate. Even a "remainder interest under [a] testamentary trust . . . constituted a sufficient property interest to make it a part of [the] estate for consideration in connection with a property

division under § 34."  Davidson v. Davidson, 19 Mass. App. Ct. at 372.[16]

vi.  The 2004 trust valuation and division.  Having decided that the 2004 trust was includable in the marital estate, the judge had discretion to divide that asset.  "Once the judge included these assets as part of the marital estate, [he] had broad discretion to determine how to divide the entire estate equitably . . . ."  Williams v. Massa, 431 Mass. at 625-626.  Moreover, the fact that the value of a vested, but not yet distributed, interest may not be susceptible of precise calculation "does not alter its character as a divisible asset."  Lauricella v. Lauricella, 409 Mass at 217.  See Davidson v. Davidson, 19 Mass. App. Ct. at 373 n.12.

Our divorce law takes an expansive view of what may comprise the marital estate of a party, including a beneficial interest in a trust.  In this case, the distributions to the husband from the 2004 trust from 2008 to 2010 (prior to the divorce) support including the 2004 trust in the estate of the recipient subject to division under G. L. c. 208, § 34.  See Earle v. Earle, 13 Mass. App. Ct. 1062, 1063 (1982); Davidson v.

---

[16] We reject the husband's argument that simply because the pool of beneficiaries remains open to future offspring, the 2004 trust is not subject to valuation and division as an asset of the marital estate.

Davidson, 19 Mass. App. Ct. at 374 n.13; Comins v. Comins, 33 Mass. App. Ct. at 30.

For these reasons, we conclude that the ascertainable standard embedded in the 2004 trust, the enforceability of that standard for distributions to the husband, and the vested nature of the husband's interest in the 2004 trust warranted the judge in including the 2004 trust in the marital estate.[17]

e. Attorney's fees. The award of attorney's fees to the wife's counsel in the amount of $175,000 was based, in large part, on the husband's failure to obtain information concerning, and to list a value for (other than as "uncertain"), his beneficial interest in the 2004 trust. On this record, including, but not limited to, the attorney's fees unnecessarily incurred by the wife in "scorched earth litigation" and discovery violations,[18] we conclude the fees awarded are reasonable and shall be affirmed.

---

[17] The value the judge assigned to the husband's interest in the 2004 trust was justified on the record.

[18] We note two limited examples, from an array of such tactics. In the husband's trial testimony (on a point not credited by the probate judge), the husband testified that he did not know what he did with $800,000 in distributions he received. Likewise, in discovery, in an act reflecting his nonproduction of trust information, the husband in one of his financial statements referred to a beneficial interest in a trust set up by his father, but listed that trust as having no value.

2.  The contempt case.  On January 24, 2013, the wife filed a complaint for contempt, alleging that the husband had failed to comply with the amended judgment of divorce because he had not made a required monthly payment in the amount of $48,699.77.

The husband stated that he had no independent ability to make the monthly payments and, therefore, could not be adjudged in contempt.  In his answer, and later through the representations of his counsel at the contempt hearing and in his own affidavit, the husband stated that while he had been making monthly payments to the wife in the required amount as a result of loans he had been receiving from his father, in January, 2013, his father had indicated that he would no longer be lending monies to the husband for this purpose.[19]

After his father decided to stop lending money to him, the husband requested, by letter, that the two trustees of the 2004 trust make distributions to him on a monthly basis so that he could comply with the judgment.  Not surprisingly given the distribution cutoff, which was tied to the divorce, the trustees declined the husband's request for distributions.

After hearing, the husband was adjudicated guilty of contempt for failing to pay to the wife each month the sum of

---

[19] The wife acknowledges in her brief that the husband made five monthly payments to her from August 15, 2012, to December 15, 2012.

$48,699.77 for the period between January 15, 2013, and April 15, 2013. Arrearages (including the interest thereon) were fixed at $200,634.05, and the husband was ordered to pay attorney's fees to the wife's counsel in the amount of $5,250. The husband was ordered to jail for a period of sixty days unless released earlier by the payment of the amounts due. In her findings, the judge stated that the husband had violated a clear and unequivocal order and that he had sufficient assets to pay what he currently owed.

On this convoluted record, we are not persuaded that the contempt judgment can stand under the standard of Birchall, petitioner, 454 Mass. 837, 853 (2009). Here the husband did, or at least ostensibly tried to do, what he was supposed to do (write the letter to the trustees requesting distributions from the 2004 trust). Although one might be disposed to question the genuineness of all these machinations given the bias of the two trustees and the husband's father, the outcome of the matter is that it was not proved by clear and convincing evidence that the husband wilfully and intentionally violated a clear and unequivocal order. Accordingly, the judgment of contempt is set aside. See Dominick v. Dominick, 18 Mass. App. Ct. 85, 94 (1984); Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 289 (1996).

3. The motions to stay. Following the entry of the amended judgment of divorce, the husband filed a motion for stay

pending appeal, which was denied by the probate judge on March 7, 2013. Thereafter, the husband filed a motion for stay in this court pursuant to Mass.R.A.P. 6(a), as appearing in 454 Mass. 1601 (2009), which was denied by a single justice, without comment, on April 12, 2013. The husband has appealed from the order of the single justice. We see no merit in this appeal. Indeed, we note that on February 11, 2014, a panel of this court stayed so much of the amended judgment as required the husband to pay to the wife the monthly sum of $48,699.77 for twenty-four months to effectuate the judgment.

As to the stay during this appeal, that stay shall be vacated upon entry of the rescript by this court.[20]

Conclusion. In the divorce appeal, docket no. 13-P-906, the amended judgment is affirmed. In the contempt action,

---

[20] Contrary to the wife's assertion, we decline to hold that the judge improperly failed to include the husband's hypothetical breach of fiduciary duty claim (which she values at $380,000) as a marital asset under G. L. c. 208, § 34. Where, as here, there is no pending lawsuit against the trustees, contrast Hanify v. Hanify, 403 Mass. 184, 188 [1988]), and the record is devoid of indication that the husband intends to file such an action, we think the hypothetical breach of fiduciary duty claim is too speculative to be included in the marital estate.

We also reject the wife's argument that future trust distributions to the husband should have been included in the determination concerning alimony. The judge correctly decided that "[s]ince Husband's share of the 2004 trust is being divided, the court will not use any future stream of income from distributions in assessing alimony."

docket no. 13-P-1385, the judgment of contempt is vacated.  The wife's request for appellate attorney's fees and costs is denied.  In the appeal from the order of the single justice denying the stay pending appeal, docket no. 13-P-686, the appeal is dismissed.

<u>So ordered</u>.

FECTEAU, J. (dissenting, with whom Kantrowitz, J., joins). In my view, the husband's interest in the 2004 income distribution trust (the 2004 trust) is too remote and speculative, too dependent on trustee discretion, and too elusive of valuation to have been included in the marital estate for purposes of division. Therefore, I respectfully dissent from that part of the majority opinion affirming the portion of the amended judgment which includes the husband's interest in the 2004 trust in the marital estate for purposes of division pursuant to G. L. c. 208, § 34.

I recognize, as the majority points out, that the existence of a spendthrift clause within a trust instrument, such as the trust instrument at issue here, does not necessarily preclude the trust from being included in the marital estate. See Lauricella v. Lauricella, 409 Mass. 211, 216 (1991). Moreover, it is also accurate for the majority to state that the uncertainty of value of a party's interest in an asset alone is not necessarily sufficient to preclude consideration of the interest as subject to division. See id. at 217. Last, I agree that the trust at issue here contains an ascertainable standard -- namely, the "comfortable support, health, maintenance, welfare, and education" of each member of the class. However, each of the aforementioned propositions cannot be viewed in isolation but, rather, must be read together and in the context

of the entire trust instrument.  As discussed further infra, the trust instrument as a whole, including but not specifically limited to the spendthrift clause, the uncertain value of the interest, and the discretionary nature of the instrument, renders the husband's interest in the trust too speculative and remote for inclusion in the divisible estate.  See D.L. v. G.L., 61 Mass. App. Ct. 488, 496-497 (2004).

At the outset, the wife's reliance upon Comins v. Comins, 33 Mass. App. Ct. 28 (1992), is misplaced, as it does not govern the present case in material respects.  In Comins, the wife was the beneficiary of a fund "held as a separate trust," for her sole benefit, that had been settled and funded by her father, the terms of which provided that "the trustee should 'in its discretion pay to [the wife] so much or all of the income and principal of [the trust] as in its discretion it deems advisable to provide for the comfort, welfare, support, travel and happiness of [the wife].'"  Id. at 30 & n.4 (emphasis in original).  The wife was also granted the power to appoint recipients of the trust corpus upon her death.  Ibid.  In addition, the trust had a fixed fair market value.  Id. at 30. It was in this context that we concluded that the judge properly included in the marital estate the wife's interest in the trust, stating, inter alia, that "[a]s in Lauricella [v. Lauricella, 409 Mass. at 216,] the wife has a 'present, enforceable,

equitable right to use the trust property for [her] benefit.'"[1]
Id. at 31.  Compare Randolph v. Roberts, 346 Mass. 578, 579
(1964) (where Supreme Judicial Court, in discussing trust
established for support of named beneficiary, stated: "[t]he
trust confided exclusively to the discretion of the trustees the
decision whether any principal should be used for the support of
the defendant [beneficiary].  She has no absolute right to the
use of any part of the principal, and could herself compel
principal payments only by showing that the trustees had abused
their discretion by acting arbitrarily, capriciously, or in bad
faith"); Pemberton v. Pemberton, 9 Mass. App. Ct. 9, 20-21
(1980) (where, in case in which trust appears to have contained
ascertainable standard, we stated, "if even apart from the
spendthrift clause a trustee is given the discretionary power to
distribute income or principal to described beneficiaries, 'any
right of any beneficiary to receive anything is subject to the
condition precedent of the trustee having first exercised his
discretion" [quotation and citation omitted]).

Unlike the trust in Comins, there are a number of
considerations regarding the trust in the present case that

---

[1] The sole asset of the trust in Lauricella was a two-family
house, and the Supreme Judicial Court stated that the husband in
that case had exercised his right to use the property during the
marriage by residing in one of the dwelling units in the house.
Lauricella v. Lauricella, 409 Mass. at 212, 216.

militate against inclusion of the husband's interest in the trust, for purposes of a division of property in the marital estate. First, the trust at issue has an open class and multiple beneficiaries, in different generations, to whom the trustees owe fiduciary duties.[2] This is in obvious contrast to the trust in Comins, which had as its sole beneficiary the wife, and the trust in Lauricella, of which the husband was one of two beneficiaries. Given that the trust at issue here has an open class, both the near-term and long-term interests of the beneficiaries are implicated. See D.L. v. G.L., 61 Mass. App. Ct. at 497 (citing as one factor generational nature of trust in concluding that husband's interest in trust was too remote and speculative).

Second, the "ascertainable standard" in the present case cannot be read in isolation. It must be considered in the context of the terms of discretion in which it is found and of the entire trust instrument. While the trust instrument evinces an intent on the part of the husband's father to benefit the

_____

[2] There are currently eleven beneficiaries of the 2004 trust -- the husband and his two siblings, and their eight children. The judge noted that neither the husband nor his siblings have grandchildren "at this time." Only the husband and his two siblings have received any distributions from the 2004 trust to date. The trust also provides that, until the death of the donor, the independent trustee is authorized, "in its sole and absolute discretion, to add one or more spouses of the Donor's issue as a permissible beneficiary of the income and principal of any trust established hereunder."

husband (and the other beneficiaries) for specified purposes, it grants to the trustees discretion as to the amounts and timing of distributions and allows the trustees to take into account (among other factors) funds available from other sources.  The trustees have made distributions in some years and not in others.  In short, the husband's interest in the 2004 trust stands on different footing from a party's interest in cases where interests are more clearly fixed and certain.  Compare Lauricella v. Lauricella, 409 Mass. at 216-217 (husband's interest in trust rightfully included in marital estate where husband was one of two beneficiaries, and trust was completely funded by sole asset, which was house in which husband had regularly resided previously and from sale of which husband could profit); Comins v. Comins, 33 Mass. App. Ct. at 30-31 (wife's interest in trust properly included in marital estate where wife was sole beneficiary of separate trust which had fixed fair market value).

Significantly, valuation of the husband's interest is too speculative to stand and further demonstrates why the interest should not have been included in the estate.  There are serious problems in this case with respect to the judge's determination that the husband has a one-eleventh interest in the 2004 trust which underscore the difficulty of establishing the husband's interest and undermine the judge's valuation of that interest.

Simply put, the judge's determination of the husband's one-eleventh interest, and the valuation that flows therefrom, should not stand.  Not only does the trust instrument make clear that the class of beneficiaries is open (and the number of beneficiaries may well increase), but the trust also allows for distributions to be made in equal or unequal shares, and upon consideration, in the trustees' discretion, of funds available from other sources for the needs of each beneficiary.[3] Furthermore, determination of the husband's interest in the principal amount at that time at one-eleventh places him, and the wife, by virtue of this ruling, in an unfair advantage, not only vis-à-vis possible additional beneficiaries, but also in the event of a deterioration in the trust corpus (which appears not unlikely given the scrutiny of "for-profit" educational institutions by the Federal government).[4]  In the circumstances

---

[3] Indeed, the judge acknowledged in her order denying the motion for stay pending appeal that the exact amount of the husband's interest in the trust may be uncertain.

[4] There are two additional problems relating to valuation of the stocks at issue.  First, the nature of the corporations -- for-profit colleges -- is such that shareholders of the corporations, such as the trust, are obligated to contribute money to the corporations yearly when the corporations are attempting to comply with Federal rules and regulations. Therefore, the trust corpus can fluctuate greatly depending on the financial needs of the corporations in relation to compliance with Federal law.  Second, the two corporations in which the trust owns stock are close family corporations and, thus, it appears that the stocks are not publicly traded. Common sense dictates that this fact renders the stock even more

of this case, the fractional share methodology employed by the judge has produced an arbitrary result.  See Adams v. Adams, 459 Mass. 361, 386 (2011); Ray-Tek Servs., Inc. v. Parker, 64 Mass. App. Ct. 165, 175 (2005) ("Valuation of assets . . . should be based on evidence that shows it by a fair degree of certainty and accuracy" [citation omitted]).[5]

The majority makes note of what it considers machinations on the part of the trustees to discontinue trust payments to the husband on the eve of the divorce filing in an effort to paint the husband's interest as remote and speculative where it never had been previously.  However, the primary focus of the instant inquiry should be the terms of the trust instrument itself, not how those terms may be or have been manipulated.  In other

---

difficult to value and presumably more difficult to sell (if the trustees decided, in their discretion, to sell the stocks), and valuation necessarily depends on third-party appraisals only. It should also be noted that the trust's thirty-six percent share in one corporation is a nonvoting share, and the professional trustee testified that there would not be a buyer for nonvoting shares such as these.

[5] The wife, in her proposed rationale, took the position that a disposition of the husband's interest in the 2004 trust should not be made on an "if and when received" basis.  Relying, in part, on Krintzman v. Honig, 73 Mass. App. Ct. 1124 (2009) (a case decided pursuant to Appeals Court rule 1:28), she asserted that such an approach is inappropriate (and essentially constitutes an illusory division) when it could enable the trustees to make distributions in a manner that would prevent her from obtaining the value of the marital asset to which she is entitled.

words, consideration of such manipulation must be secondary to the terms of the trust instrument itself.[6]

In addition to the aforementioned issues, inclusion of the husband's interest in the trust will create practical problems. Namely, the judge's decision to include the husband's beneficial interest in the trust as a divisible asset of the marital estate means that administrative hardships -- in the form of future litigation -- are not only possible but very likely. See Williams v. Massa, 431 Mass. 619, 628 (2000) (court, in discussing husband's unspecified "contingent remainder interests," stated: "[n]either the present assignment of a percentage of a contingent interest's value, nor a future award

_____

[6] It is worth noting that a trust for the parties' son was established by the husband's father when the son was born. The son's private school tuition is currently paid by the trust which, as of March, 2012, had a market value of approximately $158,000. The husband's father and his husband's father's wife pay money into the trust and the husband is the trustee. The judge found that the husband's father had indicated at trial that if the husband could not pay for something in connection with the son's education, he and his wife would ensure that the son is taken care of through the age of twenty-three, or through an undergraduate program.

Similarly, the husband's father established a trust for the parties' daughter in her name. The husband's father and his wife deposit money into the trust and the husband is the trustee. As of March, 2012, the trust had a market value of approximately $157,000. The judge found that the husband had indicated that should the funds in the daughter's trust become insufficient to meet her needs, he would cover any expense. The husband's father also testified that that he and his wife would ensure that the needs of the parties' daughter were taken care of.

on an 'if and when' basis, avoids administrative hardships inherent in the valuation of expectant interests or in the requirement of continued court supervision").  Here, not only are there administrative hardships inherent in the valuation of the husband's interest, but continued court supervision looms large, as the judge's decision appears to envision future actions by the husband and the trustees (which could conceivably result in ancillary litigation).  Also, it should be noted that, unlike alimony, property divisions are not subject to modification. See Hanify v. Hanify, 403 Mass. 184, 193 (1988) (Liacos, J., concurring in part and dissenting in part).  This is important given that the class is open and subject to growth, thereby making the valuation even more dubious.

On all of the circumstances, the husband's interest in the trust should not have been included in the marital estate. Rather, this interest should have been weighed under the G. L. c. 208, § 34, criterion of "opportunity of each [spouse] for future acquisition of capital assets and income."  For this reason, I dissent.