NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12031

CURT F. PFANNENSTIEHL  vs.  DIANE L. PFANNENSTIEHL.


Norfolk.     April 5, 2016. - August 4, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Hines,
JJ.[1]


Divorce and Separation, Division of property.


Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on September 22, 2010.

The case was heard by Angela M. Ordoñez, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Robert J. O'Regan for the husband.
Jillian B. Hirsch for the wife.
Martha R. Bagley, pro se, amicus curiae, submitted a brief.
William H. Schmidt, pro se, amicus curiae, submitted a
brief.


DUFFLY, J.  In this appeal from a judgment of divorce, we

are asked to determine whether the present value of the

_____

[1] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.

husband's beneficial interest in a discretionary spendthrift trust (2004 trust) may be included in the parties' divisible marital estate. See G. L. c. 208, § 34, as amended by St. 2011, c. 124, §§ 1, 2. As part of the judgment of divorce in 2012, a judge in the Probate and Family Court awarded Diane L. Pfannenstiehl[2] sixty per cent of her husband Curt F. Pfannenstiehl's interest in the present value of the 2004 trust. At that time, the trust was valued at $2,265,474.31. Curt appealed, arguing that the judge abused her discretion by including the 2004 trust in the marital estate. In a divided opinion, the Appeals Court affirmed. See Pfannenstiehl v. Pfannenstiehl, 88 Mass. App. Ct. 121, 124 (2015). We granted Curt's application for further appellate review, limited to issues concerning the 2004 trust.

We conclude that Curt's interest in the 2004 trust is "so speculative as to constitute nothing more than [an] expectanc[y]," and thus that it is "not assignable to the marital estate." See Adams v. Adams, 459 Mass. 361, 374 (2011), S.C., 466 Mass. 1015 (2013). Although Curt's expectancy of future acquisition of income from the 2004 trust is not part of the marital estate, on remand, the judge, pursuant to G. L. c. 208, § 34, may consider that expectancy as part of the

---

[2] Because the parties share the same last name, we refer to Curt F. Pfannenstiehl and Diane L. Pfannenstiehl by their first names.

"opportunity of each [spouse] for future acquisition of capital assets and income," in the judge's determination of a revised equitable division of the marital property.[3] See Williams v. Massa, 431 Mass. 619, 629 (2000); Drapek v. Drapek, 399 Mass. 240, 245 (1987).

1. Facts. "We recite the facts from the judge's findings and the uncontradicted evidence" in the record. Baccanti v. Morton, 434 Mass. 787, 788 (2001). Curt and Diane were married on February 5, 2000. They have two children, a son and a daughter. Curt filed his complaint for divorce on September 13, 2010. The parties were married for twelve years, but had been separated for nearly two years at the time of trial. Pursuant to G. L. c. 208, § 48, the length of the marriage thus was ten years and seven months. An amended divorce judgment was entered on August 27, 2012. At that time, Curt was forty-two years old and Diane was forty-eight years old; each was in generally good health. Their son was then eleven years old and their daughter was eight years old.[4]

During the marriage, Curt was employed primarily as an assistant bookstore manager for a subsidiary of his father's

---

[3] We acknowledge the amicus briefs submitted by Martha R. Bagley and William H. Schmidt.

[4] The judge awarded shared legal custody of the children to both parents, and primary physical custody to Diane. The judge incorporated in the judgment of divorce the parties' stipulation as to the amount of child support Curt was to pay Diane.

corporation, Educor, Inc.,[5] earning approximately $170,000 per year Curt's total annual income was approximately $190,000 at the time of trial, including his earnings at other part-time jobs.[6] Prior to and during the first few years of the marriage, Diane served in the United States Army Reserves, which obligated her to participate in two weeks of training twice per year. In 2004, Diane retired from the Army Reserves, two years short of the twenty years of service that would have entitled her to a pension. The judge found that she made the decision to retire after pressure from Curt and his family following the birth of their daughter, who has Down syndrome. From 2004 through the time of trial, Diane worked one day per week as an ultrasound technician. At the time, Diane was earning a gross annual income of $22,672. She also received $7,428 per year in rental income.[7]

During the marriage, the parties lived an upper middle class lifestyle. They owned a home valued at in excess of

---

[5] The corporation manages a number of for-profit institutions of higher education in Massachusetts and Indiana. The parties suggest that Curt has continued to be employed in the same capacity in his father's corporation since the divorce.

[6] Curt also worked part time as an on-call fire fighter, and occasionally as a snow plow driver for the town of Dover and for private clients.

[7] The rental income was from a two-family house held in Diane's name alone.

$700,000, as well as other real estate,[8] took several vacations each year, and belonged to a country club. The income to support this lifestyle was derived largely from Curt's earnings, augmented by support from Curt's father, as well as by distributions to Curt from the 2004 trust. The judge found that Diane made significant contributions as a homemaker and caretaker of the children, while also contributing her earnings and rental income to the marital estate.

2. Discussion. a. The 2004 trust. The irrevocable trust at issue was established by Curt's father in 2004, a few years after Curt and Diane married.[9] The trust benefits an open class of beneficiaries,[10] composed of any one or more of the then living issue of Curt's father. "Issue" is defined in the trust as the "lawful blood descendants in the first, second, or any

---

[8] The judge found that the total value of the parties' marital estate, which included real estate, bank accounts, retirement accounts, insurance proceeds, deferred compensation, and personal property, was $4,305,379.28. The parties stipulated to the value of the real estate, and, by the time of trial, had divided the majority of the assets other than the 2004 trust, the valuation and division of which were the key issues at trial.

[9] The 2004 trust provides that it is governed in accordance with the laws of the Commonwealth.

[10] An open class of beneficiaries is one in which the interests of currently living beneficiaries are subject to partial reduction in favor of persons born after the creation of the trust who, under its terms, are entitled to share as members. See H.S. Shapo, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 182, at 404 (3rd ed. 2012).

other degree of" Curt's father.  The 2004 trust is funded through shares of two for-profit education corporations, several life insurance policies, and a cash account.  The trustees are Curt's brother, who is also a trust beneficiary, and a family attorney who is not a beneficiary.

The 2004 trust provides that distributions to beneficiaries may be made only with the approval of both trustees, who

> "shall pay to, or apply for the benefit of, a class composed of any one or more of the Donor's then living issue such amounts of income and principal as the Trustee, in its sole discretion, may deem advisable from time to time, whether in equal or unequal shares, to provide for the comfortable support, health, maintenance, welfare and education of each or all members of such class."

The 2004 trust also contains a spendthrift provision, pursuant to which "[n]either the principal nor income of any trust created hereunder shall be subject to alienation, pledge, assignment or other anticipation by the person for whom the same is intended, nor to attachment, execution, garnishment or other seizure under any legal, equitable or other process."[11]

---

[11] A spendthrift provision has the effect of prohibiting a creditor or assignee from reaching a beneficiary's interest in a trust, unless the beneficiary receives such distribution and the creditor then pursues a claim against the beneficiary individually.  G. L. c. 203E, § 502 (c).  See Pemberton v. Pemberton, 9 Mass. App. Ct. 9, 19-20 (1980); Newman, Spendthrift and Discretionary Trusts:  Alive and Well Under the Uniform Trust Code, 40 Real Prop. Prob. & Tr. J. 567, 569 (2005).  In the absence of a spendthrift provision, a "court may authorize a creditor or assignee of the beneficiary to reach the beneficiary's interest by attachment of present or future distributions . . . or other means."  G. L. c. 203E, § 501.

The judge found that, at the time of trial, there were eleven living beneficiaries -- children and grandchildren of Curt's father -- and no great-grandchildren. The judge determined the total present value of the 2004 trust to be $24,920,217.37 at that time. Based on her finding that Curt had a one-eleventh interest in the trust, she determined the value of Curt's interest in the trust to be $2,265,474.31.

At that point, only Curt and his two siblings had received any distributions from the 2004 trust; no distributions had been made to any of the grandchildren. Between 2004 and 2007, there were no distributions from the trust. From April, 2008, until August, 2010, Curt and his siblings received regular, tax-free distributions from the trust.[12] During that period, Curt received regular monthly distributions for a total of $800,000 in distributions. Since the complaint for divorce was filed in September, 2010, Curt has not received any distributions from the 2004 trust. The judge found that the distributions to Curt ceased when he filed the complaint for divorce because the trustees deemed it too risky to distribute funds to Curt at a time when he might be required to share the funds with Diane, a nonbeneficiary. The trustees continued to make distributions to Curt's two siblings.

---

[12] Under the terms of the 2004 trust, distributions are not taxable to the beneficiaries, because Curt's father is responsible for taxes on any income earned by the trust.

The judge determined that distributions from the 2004 trust "augmented" Curt and Diane's income and lifestyle during the marriage. The judge concluded that Curt's interest in the 2004 trust should be included as part of the marital estate, and awarded sixty per cent of that estate to Diane.[13] The judge based the award on her findings concerning Diane's "past, present and future contributions and her lessened ability to acquire capital assets and work full-time," which she contrasted with Curt's "high salary, flexible work hours and beneficiary status in his father's estate planning." To effectuate the division of the 2004 trust, the judge ordered Curt to pay Diane the sixty per cent of Curt's interest that she had been awarded in twenty-four monthly instalments of $48,699.77, for a total payment of $1,168,794.41, which included a three per cent interest rate.[14]

---

[13] The judge decided that, because Curt's "share of the 2004 Trust is being divided," the judge would "not use any future stream of income from distributions in assessing alimony," and ordered that "[n]either party is awarded alimony at this time." Because we conclude that the 2004 trust should not have been included in the divisible marital estate, it may be appropriate on remand for the judge and the parties to revisit whether alimony is now appropriate, and, if so, in what amount, on the basis of the factors the judge may deem relevant pursuant to G. L. c. 208, § 53 (a).

[14] Although Curt initially complied with the order obligating him to make these payments, in January, 2013, Diane filed a complaint for contempt, asserting that Curt had that month stopped making the required payments. See Pfannenstiehl v. Pfannenstiehl, 88 Mass. App. Ct. 121, 135 (2015). After a

b.  <u>Equitable division of the marital estate</u>.  General Laws
c. 208, § 34, vests broad authority in judges of the Probate and
Family Court to make equitable division of the property included
in the marital estate of divorcing parties, taking into account

> "the length of the marriage, the conduct of the parties
> during the marriage, the age, health, station, occupation,
> amount and sources of income, vocational skills,
> employability, estate, liabilities and needs of each of the
> parties and the opportunity of each for future acquisition
> of capital assets and income. . . .  The court may also
> consider the contribution of each of the parties in the
> acquisition, preservation or appreciation in value of their
> respective estates."

See <u>Rice</u> v. <u>Rice</u>, 372 Mass. 398, 401 (1977); <u>Bianco</u> v <u>Bianco</u>,
371 Mass. 420, 422 (1976).

Although a judge "has considerable discretion in
determining how to divide [marital] assets equitably," <u>Baccanti</u>
v. <u>Morton</u>, 434 Mass. 787, 792 (2001), the question we address
here, whether an interest in a trust is sufficiently similar to
a property interest that may be included in a marital estate and
thus subject to equitable division under G. L. c. 208, § 34, is
a question of law.  See <u>Lauricella</u> v. <u>Lauricella</u>, 409 Mass. 211,

_____

hearing, Curt was adjudicated in contempt.  <u>Id</u>. at 136.
Concluding that Curt "at least ostensibly tried" to obtain funds
from the trust to make the payments to Diane, but that the
trustees refused to distribute the funds, the Appeals Court set
aside the judgment of contempt, see <u>id</u>., commenting that Curt
had not "wilfully and intentionally violated a clear and
unequivocal order."  Although the judgment of contempt is not
before us in this limited grant of further appellate review,
based on our conclusion that the 2004 trust should not have been
included in the marital estate, we would agree that the judgment
of contempt must be set aside.

213 (1991).

> General Laws c. 208, § 34, further provides that

> "the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, . . . pension, profit-sharing, annuity, deferred compensation and insurance."

A party's estate for purposes of equitable division under G. L. c. 208, § 34, "includes all property to which a party holds title, however acquired."  Williams v. Massa, 431 Mass. 619, 625 (2000).  In light of the plain language of G. L. c. 208, § 34, and the Legislature's explicit intent to grant judges broad discretion to effectuate an equitable distribution incident to divorce, we have interpreted this provision to permit inclusion in the marital estate of a broad range of property interests.  See Lauricella v. Lauricella, supra at 213-214.  A divorcing spouse's enforceable right to an asset generally permits that asset to be included in the marital estate.  See Mahoney v. Mahoney, 425 Mass. 441, 444 (1997) (dividing pension plan but not Social Security benefits because employee has "enforceable contractual right" to pension but not to "governmental safety net" of Social Security [citation omitted]); Hanify v. Hanify, 403 Mass. 184, 186-188 (1988) (enforceable right to proceeds from successful lawsuit); Baccanti v. Morton, supra (enforceable right to delayed compensation from stock options).

Because we are not "bound by traditional concepts of title or property" in considering whether a particular interest is to be included in the marital estate, we "have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of [G. L. c. 208,] § 34."  Baccanti v. Morton, supra, quoting Lauricella v. Lauricella, supra at 214. See, e.g., Adams v. Adams, 459 Mass. 361, 372-373 (2011); Davidson v. Davidson, 19 Mass. App. Ct. 364, 374-375 (1985); Putnam v. Putnam, 5 Mass. App. Ct. 10, 17 (1977).  When interests are properly characterized as mere expectancies, however, they may not be included in the divisible estate of the divorcing parties.  We have "drawn a line around certain interests that are so speculative as to constitute nothing more than expectancies, and thus, are not assignable to the marital estate."  Adams v. Adams, supra at 374.  Because "[e]xpectancies . . . embody no enforceable rights accruing during marriage," Hanify v. Hanify, supra at 188, they more properly are characterized as "anticipated" but "indefinite" opportunities for the future acquisition of assets or income. Mahoney v. Mahoney, 425 Mass. 441, 444, 446 (1997).  This is because expectancies have "only theoretical value," and do not create a fixed entitlement to income.  Adams v. Adams, supra at 376.  See, e.g., Drapek v. Drapek, 399 Mass. 240, 244 (1987)

(future earned income from professional degree); Yannas v. Frondistou-Yannas, 395 Mass. 704, 714 (1985) (anticipated future income from patents); Davidson v. Davidson, 19 Mass. App. Ct. at 374 (husband's interest in inheritance from living testator who could have altered will).

Whether a trust may be included in the divisible marital estate requires close examination of the particular trust instrument to determine whether the interest is a "fixed and enforceable" property right, D.L. v. G.L., 61 Mass. App. Ct. 488, 499 (2004) (citation omitted), or "whether the party's interest is too remote or speculative" to be included. Id. at 496-497. The question turns "on the attributes" of the specific trust at issue, rather "than on principles of general application," Lauricella v. Lauricella, supra at 216, and therefore requires evaluation of the facts and circumstances of each case. See id. See also Williams v. Massa, supra at 628-629; S.L. v. R.L., 55 Mass. App. Ct. 880, 883-884 (2002); Ruml v. Ruml, 50 Mass. App. Ct. 500, 511-512 (2000). If an interest in a trust is determined after such examination to be speculative or remote rather than fixed and enforceable, and thus more properly characterized as an expectancy, the interest is to be considered under the G. L. c. 208, § 34, criterion of "'opportunity of each [spouse] for future acquisition of capital assets and income,' in determining what disposition to make of

the property that [i]s subject to division" [citation omitted]. Williams v. Massa, supra at 629.

c. Curt's interest in the 2004 trust. Curt contends that because the 2004 trust permits the trustees to distribute funds to beneficiaries in their "sole discretion," as they "may deem advisable from time to time," he has no control over when and whether he receives distributions, and, therefore, the 2004 trust is a "discretionary" trust which creates "nothing more than an eligibility for distributions."[15] Curt contends further that because the class of beneficiaries is open, it was error for the judge to conclude that he had a one-eleventh interest in the 2004 trust on the basis of the then-living beneficiaries. In addition, he maintains that, considering the trust instrument as a whole, see Dana v. Gring, 374 Mass. 109, 117 (1977), and in light of his father's intent, the 2004 trust may not be used to benefit Diane. See Morse v. Kraft, 466 Mass. 92, 98 (2013) (when interpreting trust, intent of settlor is paramount).

Interests in discretionary trusts generally are treated as expectancies and as too remote for inclusion in a marital estate, because the interest is not "present [and] enforceable";

---

[15] "A discretionary trust is one in which the settlor gives the trustee authority over the trust . . . [including the authority] to use discretion in the timing and amount of income payments to the beneficiary." H.S. Shapo, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 228. See Restatement (Second) of Trusts § 155 (1959).

the beneficiary must rely on the trustee's exercise of discretion, does not have a present right to use the trust principal, and cannot compel distributions.  See Lauricella v. Lauricella, 409 Mass. 211, 216 (1991); Randolph v. Roberts, 346 Mass. 578, 579 (1964).  Diane attempts to distinguish the 2004 trust from a "pure" discretionary trust,[16] however, by noting that distributions from the 2004 trust are subject to an "ascertainable standard" which governs the trustee's discretion.  See Dana v. Gring, 374 Mass. 109, 116-117 (1977).

Under § 103 of the Uniform Trust Code, an "ascertainable standard" refers to a trust provision that requires a trustee to distribute funds to support a beneficiary's needs "relating to an individual's health, education, support or maintenance."[17]  See G. L. c. 203E, § 103.  This standard limits the discretion of the trustee, who is obligated to make distributions with an eye toward maintaining the beneficiary's standard of living in existence at the time the trust was created.[18]  See Dana v.

---

[16] "Pure" discretionary trusts permit a trustee's "sole," "uncontrolled," or otherwise unlimited exercise of discretion, and do not provide a governing standard for trust distributions. H.S. Shapo, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 228.  See Restatement (Second) of Trusts § 155(1) (1959); Amann, 6 Est. Plan. & Community Prop. L.J. 181, 184-185 (2014).

[17] General Laws c. 203E, § 814 (b) (1), provides that, unless otherwise indicated, the "ascertainable standard" is incorporated into the distribution provisions of every trust governed by Massachusetts law.

[18] The Internal Revenue Service (IRS) also uses the term

Gring, supra, discussing Woodberry v. Bunker, 359 Mass. 239, 241-243 (1971).

The trustee of a trust that contains an ascertainable standard must engage in a detailed inquiry into each beneficiary's needs and finances, and must "give serious and responsible consideration both as to the propriety of the amounts and as to their consistency with the terms and purposes of the trust." See Old Colony Trust Co. v. Rodd, 356 Mass. 584, 588-589 (1970). Such consideration must be "viewed in light of [the beneficiaries'] assets and needs, when measured against the assets of the trust" (citation omitted). Marsman v. Nasca, 30 Mass. App. Ct. 789, 796 (1991). See G. L. c. 203E, § 803 (if trust has more than one beneficiary, trustee must give "due regard to the beneficiaries' respective interests").

Diane argues that, because the trustees of the 2004 trust must take Curt's standard of living into account when determining whether to make distributions, Curt has a present enforceable property right to compel distributions when he needs

_____

"ascertainable standard" in the context of trusts and estates. Under IRS regulations, a beneficiary's interest in a trust is included in that beneficiary's taxable estate if the beneficiary has a general power of appointment through which he or she controls the distribution of the trust principal, but is excluded from the taxable estate if the discretion to distribute trust principal is limited by an "ascertainable standard relating to health, education, support, or maintenance." 26 U.S.C. § 2041(a)(2), (b)(1)(A). See Dana v. Gring, 374 Mass. 109, 110-111 (1977); Woodberry v. Bunker, 359 Mass. 239, 240 (1971).

them.  Her argument relies in large part on the Appeals Court's decision in Comins v. Comins, 33 Mass. App. Ct. 28, 30-31 (1992), in which an interest in a discretionary trust with an ascertainable standard was deemed sufficiently certain to include the trust in the marital estate.  In that case, the wife was the sole beneficiary of the trust.  Id. at 30 n.4.  She received all of the trust income and held power of appointment over the trust upon her death.  Id.

Unlike the spouse in Comins, however, Curt is one of eleven living beneficiaries among an open class of beneficiaries.  The trustees of the 2004 trust are required to take into account the trust's long-term needs and assets, unpredictability in the stocks that fund it (which the judge found at times in the past have provided no income or have incurred a loss), the changing needs of the eleven current beneficiaries, and the possibility of additional beneficiaries.  Curt's present right to distributions from the 2004 trust is speculative, because the terms of the trust permit unequal distributions among an open class that already includes numerous beneficiaries, and because his right "to receive anything is subject to the condition precedent of the trustee having first exercised his discretion" in determining the needs of an unknown number of beneficiaries (citation omitted).  See Pemberton v. Pemberton, 9 Mass. App. Ct. 9, 20 (1980).

"[P]ower lodged in the trustee to invade principal 'in its uncontrolled discretion' for the maintenance, support and education of [beneficiaries] does not give to the petitioners an enforceable claim against the trust for their support." Spalding v. Spalding, 356 Mass. 729, 729 (1969). Curt's share of the trust is subject to reduction in order to benefit the needs of the remaining ten current beneficiaries, as well as any future beneficiaries. Contrast S.L. v. R.L., 55 Mass. App. Ct. at 884 & n.10 (dividing wife's one-fifth interest in trust with closed class of five beneficiaries because death of beneficiary could increase wife's interest, but her interest was not subject to reduction).[19] The judge found that distributions from the 2004 trust have not been equal from year to year and from beneficiary to beneficiary, with Curt receiving no distributions in some years.[20] In addition, although the existence of a spendthrift provision alone does not bar equitable division of a trust, see Lauricella v. Lauricella, supra at 211-212, 216-217, in light of the provisions in the 2004 trust, discussed supra, an order dividing it to benefit Diane cannot create a right in

_____

[19] "Unlike alimony, a property settlement is not subject to modification." Drapek v. Drapek, 399 Mass. 240, 244 (1987). Thus, Curt would be unable to modify a property division that included the value of his interest in the 2004 trust even if future beneficiaries or events reduce that interest. See id.

[20] As noted, Curt received distributions from the trust, which was established in 2004, only during the period from April, 2008, through August, 2010.

Curt to compel distributions in her favor, when he does not otherwise have a right to compel distributions. See Burrage v. Bucknam, 301 Mass. 235, 236 (1938); Pemberton v. Pemberton, 9 Mass. App. Ct. at 19-20.

Curt's remainder interest in the 2004 trust is equally speculative. The 2004 trust benefits future generations, and, consistent with their fiduciary obligations, the trustees are unlikely to terminate the trust and distribute the remainder of its principal in Curt's lifetime. See Dana v. Gring, 374 Mass. 109, 117-118 (1977) (trustees must comply with "evident intent to preserve trust principal for lineal descendants" and, unless trust expressly states otherwise, must administer trust with eye to future generations); D.L. v. G.L., 61 Mass. App. Ct. 488, 497 (2004) (considering generational nature of trust in concluding interest in trust remainder was too remote for inclusion in marital estate). The judge found that termination of the 2004 trust, and distribution of its remaining principal, would be contingent on the trust no longer holding any stock in one of the for-profit higher education corporations that fund it. The judge found also that the trustees do not intend to sell those shares, and that Curt does not have the ability to compel them to do so. Therefore, the possibility that the 2004 trust will be terminated and the principal distributed to the remainder

beneficiaries is remote.[21]  Cf. Lauricella v. Lauricella, supra at 212, 216 n.6; S.L. v. R.L., 55 Mass. App. Ct. 880, 884 & n.10 (2002).

Considering the language of the 2004 trust, and the particular circumstances here, the ascertainable standard does not render Curt's future acquisition of assets from the trust sufficiently certain such that it may be included in the marital estate under G. L. c. 208, § 34.  Cf. Lauricella v. Lauricella, supra at 216;  Williams v. Massa, 431 Mass. at 628-629.  As noted, however, the trust may be considered as an expectancy of future "'acquisition of capital assets and income' in determining what disposition to make of the property that [i]s subject to division."[22]  See Williams v. Massa, supra at 629, quoting G. L. c. 208, § 34; Drapek v. Drapek, 399 Mass. 240, 245 (1987).

Conclusion.  The order dividing Curt's interest in the 2004 trust is vacated and set aside.  The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

So ordered.

---

[21] Under its terms, if the 2004 trust were to be terminated, the principal would be distributed to Curt and any of his siblings over the age of thirty, or, if any sibling were deceased at the time of termination, held in trust until the children of that sibling reach the age of thirty.

[22] See notes 8 and 13, supra.