# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0537, <u>In the Matter of David Bournival and Eileen Bournival</u>, the court on July 16, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, David Bournival (Husband), appeals the final decree entered by the Circuit Court (<u>Foley</u>, J.) in his divorce from the respondent, Eileen Bournival (Wife), arguing that the trial court erred by: (1) including his interests in two discretionary trusts in the marital estate; (2) awarding Wife certain items of personal property; and (3) granting two of her requests for factual findings. Wife cross-appeals, arguing that the trial court inequitably divided the marital estate. We affirm.

## I. Facts

The trial court found the following facts. The parties were married in December 1992. Twenty-four years later, in December 2016, Husband filed the instant divorce action. At trial, the only dispute between the parties concerned the division of the marital estate. Of particular focus were Husband's interests in two discretionary trusts: (1) the David P. Bournival Life Insurance Trust dated April 24, 1991 (LIT); and (2) the Richard Bournival GST Family Trust FBO David P. Bournival (GST).

The LIT refers to Husband as the "Donor," but he contributed only $10. Husband created the trust at the direction of his parents, and his parents funded it. The intent of the trust was to provide Husband with approximately $1,000,000 in life insurance benefits on his parents' lives to pay estate taxes that might be incurred when they died. At the time of the parties' 2019 trial, the LIT consisted of a single brokerage account containing $1,252,818, which Husband managed. The LIT gives the trustees "uncontrolled discretion" to distribute principal or income to Husband and his children. However, the primary trustee of the trust, Husband's longtime accountant, interpreted this provision as allowing him to make distributions only to Husband. The other trustee is Husband's uncle. The LIT requires the trustees to provide an accounting annually and states that the trust is to be governed by Massachusetts law.

Husband is also a beneficiary of the GST. Like the LIT, the GST: (1) gives the trustees "uncontrolled discretion" to make distributions of principal or

income to Husband and his children; (2) requires the trustees to provide an annual accounting; and (3) provides that the trust shall be governed by Massachusetts law. As with the LIT, the trustees of the GST are Husband's accountant and uncle. At the time of the trial, the GST's assets, held in an account with Husband's investment firm, totaled $675,660.82.

The parties disputed whether Husband's interests in the two trusts were part of the marital estate. Husband argued that his interests were too remote and speculative to be included in the marital estate because the discretion afforded the trustees insulates him from having access to trust assets. Wife countered that the discretion afforded the trustees is illusory because the accountant (the primary trustee) lacks the neutral independence that the law requires, and the other trustee, Husband's uncle, has had no involvement in the management of the trusts or their assets.

Applying Massachusetts law, the trial court determined that Husband's interests in the trusts were part of the marital estate. The trial court then allocated the marital estate pursuant to New Hampshire law. The court found that the value of the marital estate, including the value of personal property owned by the parties, the marital homestead valued at $515,000, Wife's 2016 inheritance of $87,350, Husband's 2018 inheritance of $2,402,857, and his interests in the two trusts, totaled $8,159,616. The court acknowledged that, by statute, an equal division of the marital estate is presumed to be equitable, but then considered specifically-enumerated statutory factors to determine whether to deviate from that statutory presumption. See RSA 458:16-a, II (2018). After considering several of those factors, the court found it equitable to award Husband $5,142,906 and Wife $3,016,710.

The court acknowledged that Wife's award constituted "only 37% of the total marital estate," but concluded that its distribution was equitable "given the parties' current circumstances, [Wife's] greater contribution to the marriage and to the marital estate, [Wife] helping [Husband] through graduate school, and the enormous largely recent family helpfulness of [Husband's] family." The court explained that "aside from inheritances and trust assets, the marital estate consists of $3,828,380.00, of which [Wife] is receiving . . . 79%."

The court also explained that, although the LIT became "part of the marital lifestyle" because of distributions made in 2006 and 2014, "the most serious funding" of the LIT did not occur until after Husband's mother died in 2018, long after the parties had separated. In 2018, before Husband's mother died, the LIT held $212,827.43; after she died, the LIT gained "another $1 million in funding." Similarly, it was not until his mother died that Husband inherited an IRA of $416,255 and a more liquid account that, as of the time of trial, held $1,986,602. The court reasoned that "none of the assets received" by the LIT or by Husband in his individual capacity in 2018 "benefitted the marital lifestyle in any way," and, therefore, should not be divided equally.

2

Husband moved for reconsideration, and the relevant portions of that motion were denied. This appeal and cross-appeal followed.

## II. Analysis

The trial court has broad discretion in fashioning a final divorce decree. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014). Its discretion necessarily encompasses decisions concerning property distribution. Id. We will not overturn the trial court's decision absent an unsustainable exercise of discretion. Id. Our standard of review requires only that we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011). If the trial court's findings could reasonably have been made on the evidence presented at trial, they will stand. Spenard, 167 N.H. at 3.

### A. Husband's Interests in Trusts

We first consider Husband's assertion that the trial court erred when it determined that his interests in the two trusts constituted marital property subject to equitable distribution. We review this determination de novo because it presents a question of law. See In the Matter of Cohen & Richards, 172 N.H. 78, 83 (2019). Because no party argues otherwise on appeal, we assume without deciding that, as the trial court ruled, Massachusetts law controls whether Husband's interests in the LIT and GST constitute marital property.

Under Massachusetts law, "[a] divorcing spouse's enforceable right to an asset generally permits that asset to be included in the marital estate" for the purposes of equitable division. Pfannenstiehl v. Pfannenstiehl, 55 N.E.3d 933, 938 (Mass. 2016). Although intangible property interests may be part of a spouse's estate for the purposes of equitable distribution, "[w]hen interests are properly characterized as mere expectancies, . . . they may not be included in the divisible estate of the divorcing parties." Id. at 939. Rather than enforceable rights, expectancies "more properly are characterized as anticipated but indefinite opportunities for the future acquisition of assets or income," rather than as enforceable rights. Id. (quotations omitted). "Whether a trust may be included in the divisible marital estate requires close examination of the particular trust instrument to determine whether the interest is a fixed and enforceable property right, or whether the party's interest is too remote or speculative to be included." Id. (quotations and citation omitted). Making this determination "requires evaluation of the facts and circumstances of each case" and the "attributes of the specific trust at issue." Id. (quotation omitted).

Generally, "[i]nterests in discretionary trusts . . . are treated as expectancies and as too remote for inclusion in a marital estate, because the interest is not present and enforceable; the beneficiary must rely on the trustee's exercise of discretion, does not have a present right to use trust principal, and cannot compel distributions." Id. at 940 (quotation and brackets omitted). However, if the facts and circumstances of the specific trust at issue demonstrate otherwise, then the discretionary trust may be included in the marital estate. See, e.g., Savoy v. Savoy, 19-P-1076, 2020 WL 3815527, at *2 (Mass. App. Ct. July 8, 2020) (unpublished) (concluding that wife's interest was includable in the marital estate where she was the sole trustee and had "essentially unfettered ability to utilize significant funds from the trust to support herself" (quotation and brackets omitted)); Caruso v. Caruso, No. 06-P-1545, 2008 WL 200301, at *1-2 (Mass. App. Ct. Jan. 24, 2008) (unpublished) (deciding that trial court did not commit an error of law by including in the marital estate the husband's interest in a trust of which he was one of the trustees where his co-trustee "was in reality little more than the husband's 'yes man,' who would go along with anything the husband wanted").

Here, the trial court decided, based upon the evidence at trial and the inferences drawn therefrom, that "while the trusts may be potentially independent of [Husband] 'on paper,' in practice, he has so much control over the trusts that they do not appear to be fully independent 'discretionary' trusts." The court credited Wife's evidence that the requirements of the trusts were not being followed in that there are no annual accountings. The court further found that, although the LIT has two trustees, Husband's uncle and Husband's accountant, the uncle "has played absolutely no role" in administering that trust since his appointment in 2008. The court determined that the uncle's "lack of involvement . . . left [the accountant] as the effective sole trustee."

The court cited several examples "of the way in which [the accountant] appears to be acting on behalf of [Husband], rather than independently," including: (1) the accountant's refusal to provide an accounting to Husband's estranged adult child, despite the child's entitlement to one; (2) the accountant's decision to invest all of the trust funds with Husband's investment firm; (3) discussions between the accountant and Husband about sharing clients; (4) discussions between the accountant and Husband about distributions; (5) the fact that Husband is the broker of all portfolio amounts of the trusts; (6) Husband's active role in the investment of trust funds; (7) Husband's admission on cross-examination that the accountant does not know how any of the trust funds are invested; and (8) the inference from Husband's testimony and the accountant's deposition testimony that the accountant encouraged and facilitated Husband's early tax filing in 2017 to claim a $20,000 overpayment that the parties had made jointly before Wife could claim it.

4

From the circumstantial evidence, cited above, and the inferences the court drew therefrom, the court found that Husband "probably has been significantly involved in the investment of trust funds and [has] provide[d] [the accountant] with input on related trust decisions." Therefore, the trial court found that the accountant "lacked the neutral independence, required of a trustee, to whose discretion [Husband] pointed as preventing [Husband's] access to trust assets as a matter of right."

The court acknowledged that, although Husband is not a trustee, he "has been managing the assets of the trusts, and making unknown amounts of fees from that role." The court also acknowledged that, although the GST appeared to be generational in nature, Husband's "testamentary power of appointment to distribute the assets of the trust to any one or more appointees other than himself, his estate, his creditors, or the creditors of his estate," weighed against finding that the GST was intended to benefit only future generations. (Quotation omitted.) Having found that the trusts are for Husband's benefit, the class of beneficiaries of the trusts is limited to Husband and his children, the accountant trustee lacks independence, and Husband exerts control over the trust assets and has a power of appointment over any assets of the GST that are not exhausted during his lifetime, the court determined that Husband's interests in both trusts constitute marital property.

Husband argues that "[e]xcept for what the trial court itself described as 'circumstantial evidence', there was no direct, objective evidence that [he] ever had or exercised any actual control over any decision made by [the accountant] with respect to the administration of the trust." In effect, Husband argues that the inferences the trial court drew from the circumstantial evidence were unreasonable. Although Husband offers his own inferences from the facts, we cannot conclude that the trial court erred by drawing different ones. Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. In the Matter of Kempton & Kempton, 167 N.H. 785, 799 (2015). Therefore, we will not substitute our judgment for that of the trial court. Id. Because we conclude that a reasonable person could have reached the same decision as the trial court in this case based upon the same evidence, we uphold the trial court's determination that the trustee lacked the neutral independence required of a trustee.

Husband next asserts that, to the extent that the trial court considered whether the trust assets were used during the marriage, the trial court erred because "[t]here [was] no objective evidence that the parties had an expectation, present or future, to utilize the trust assets." We note that the trial court did not consider whether the trust assets were used in the marriage when it ruled that Husband's interests in the trusts were included in the marital estate. Rather, the trial court considered whether the trust assets were

part of the "marital lifestyle" when it considered how best to equitably distribute the marital estate. To the extent that Husband challenges the trial court's factual finding that, because of how the parties used distributions from the LIT in 2006 and 2014, the LIT became "part of the marital lifestyle," we uphold the finding because the record supports it.

Husband next contends that the trial court misapplied Massachusetts law to the "limited testamentary power of appointment" he has under the GST. We are not persuaded.

Citing Ruml v. Ruml, 738 N.E.2d 1131 (Mass. App. Ct. 2000), the trial court stated that "[a] power of appointment is a factor weighing in favor of inclusion of a divorcing spouse's interest in the marital estate." See Ruml, 738 N.E.2d at 1141-42 (holding "that in light of the broad powers of appointment reserved by the husband in the trust assets, such assets were subject to equitable distribution"). The trial court further stated that "[e]ven if Ruml were somehow inapposite, as [Husband] argues, [the] broad power [of appointment] granted to [him] weighs against a finding that the GST was intended to be 'generational,' and therefore that [his] interest is too 'speculative' to include in the marital estate." We find no error in these statements, which are based upon Massachusetts law.

Husband next argues that, "[a]s a matter of law, the LIT and GST are not marital property." However, his argument is premised upon his assertion that the record compelled the trial court to find that he never "had or exercised any actual control over any decision made by [the accountant] with respect to the administration of the trust[s]," that the LIT and GST "were not woven into the fabric of the marriage," and that both trusts were intended to benefit future generations rather than him. Based upon our review of the record, we conclude that the trial court was not compelled to find these facts. Accordingly, having rejected the premise for the argument, we likewise reject the argument itself.

B. Division of Marital Estate

We next address the parties' arguments regarding the trial court's distribution of the marital estate. "RSA 458:16-a, II creates a presumption that equal distribution of marital property is equitable." In the Matter of Heinrich & Heinrich, 164 N.H. 357, 363 (2012) (quotation omitted). Therefore, absent special circumstances, the court must make the distribution as equal as possible. Id. The statute enumerates several factors for the court to consider, including: (1) the "duration of the marriage," RSA 458:16-a, II(a); (2) the parties' age, health, social or economic status, occupation, vocational skills, employability, separate property, amount and sources of income, needs and liabilities, and opportunity for future acquisition of capital assets and income, see RSA 458:16-a, II(b)-(c); (3) the "actions of either party during the marriage

6

which contributed to the growth or diminution in value of property owned by either or both . . . parties," RSA 458:16-a, II(f); (4) whether there is a "[s]ignificant disparity between the parties in relation to contributions to the marriage," RSA 458:16-a, II(g); (5) any direct or indirect contribution a party made to help educate or develop the career of the other party, see RSA 458:16-a, II(h); (6) the "value of any property acquired by gift, devise, or descent," RSA 458:16-a, II(n); and (7) "[a]ny other factor that the court deems relevant," RSA 458:16-a, II(o). The trial court need not consider all of the enumerated factors or give them equal weight. Heinrich, 164 N.H. at 363-64. Moreover, the trial court is not precluded from awarding a particular asset in its entirety to one party. Id. at 364.

In this case, the trial court considered the relevant statutory factors before deciding that its "unique allocation of marital assets is equitable." Wife argues that the trial court "erred in awarding all of the trust assets to the husband" based upon its determination that "the vast majority of the assets in the LIT was received in 2018, combined with the facts that the funds received in 2018 were not used during the marriage." She contends that, in so doing, the trial court "placed undue weight on the timing of the receipt of some of the inheritance without considering other factors that compelled a more even division."

In addition, she argues that the trial court "erred . . . by ignoring the vast majority of the factors in RSA 458:16-a, which compelled a more even division." Wife contends that had the court properly weighed certain facts, such as the fact that the parties were married for nearly 24 years and that because she is three years older than Husband, she has less time than he does to accumulate wealth, the court would have awarded her an equal division of the entire marital estate, including Husband's interests in the two trusts.

In effect, Wife "asks this court to reweigh the equities in this case," which is not our role on appeal. Id. at 365. "Our role is only to determine whether the trial court's decision was a sustainable exercise of discretion, meaning that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. (quotation omitted). Based upon our review of the record submitted on appeal, we conclude that the trial court sustainably distributed the marital estate in an equitable fashion. Therefore, we hold that the trial court's decision does not constitute an unsustainable exercise of discretion.

Husband next contends that the trial court unsustainably exercised its discretion by awarding his guns to Wife as well as other items of personal property including certain electronics, draperies, and master bedroom furniture. Husband contends that although "the trial court was alerted to the fact that [he owns] twenty-three (23) guns," and that he owned 12 of them before the parties married, "the Final Decree merely awards 'Guns' with no

7

further detail." He contends that this award "is far too vague to be enforceable." To the contrary, we interpret the trial court's order as awarding all guns owned by either party to Wife. See In the Matter of Oligny & Oligny, 169 N.H. 533, 535 (2016) (explaining that we interpret a trial court order de novo).

To the extent that Husband argues that the trial court unfairly awarded the guns as well as other items of personal property to Wife instead of to him, despite his "well-reasoned" objections, we reiterate that it is not our role to reweigh the equities in this case. Heinrich, 164 N.H. at 365. Based upon our review of the record, we conclude that the trial court's award of personal property is reasonable, and thus, does not constitute an unsustainable exercise of discretion. See id.

C. Wife's Requests for Factual Findings

Husband challenges the trial court's decision to grant two of Wife's requests for factual findings, request nos. 46 and 47. Wife asked the trial court to find:

> 46. After the filing of the divorce petition, [Wife] learned that [Husband] was paying the household bills and expenses from her income while depositing his income into his own investment account.

> 47. In 2013 and 2014, [Wife] cashed in stock options from her employment with a request to [Husband] who was supposed to be her financial advisor to invest them in an account to put towards retirement.

Husband argues that the testimony at trial does not support these requests, and, therefore, the trial court erred by granting them. However, there is support in the record for both requests.

As to request no. 46, Wife testified that, after the divorce petition was filed, she discovered that the parties' joint checking account had only $1,100, and that although her income was being deposited into the joint account, Husband's income was not. She also testified that, because her income was the only income being deposited into the joint checking account, all of the expenses paid from the joint account were paid by her income. These expenses included home improvements, taxes, and the children's school tuition. Wife testified that when her income "wasn't enough to pay the bills, [Husband] was drawing from a home equity line of credit," rather than "pulling from his checking account." Wife testified that she asked Husband "where is your payroll going," and he responded that "it goes to a separate account with [his investment firm] because it's subject to regulatory oversight." Wife testified

8

that she did not know, at the time, that Husband "had his own separate checking account with only his name on it [and] that his payroll was going into [it]." Husband explained during his testimony that when he "went to work [for his investment firm], [he] opened up a separate bank account for [his] pay to be deposited to" so that the investment firm's compliance department could audit the account. From this testimony and the reasonable inferences to be drawn therefrom, the trial court reasonably could have granted request no. 46, interpreting the phrase "investment account" as the Husband's separate account maintained at his investment firm.

As to request no. 47, Wife testified that she cashed in stock options from her employer in 2013 and 2014, and told Husband that she wanted to put the stock option money into a retirement fund. She testified that "the money would be wire transferred over to the joint checking account, and then [Husband] moved it over to a money market account, . . . where it sat until January" 2017. From this testimony and the reasonable inferences to be drawn therefrom, the trial court reasonably could have granted request no. 47, with the understanding that when Husband deposited the funds into a money market account, he did so in the context of his job as a financial advisor.

Husband contends that by granting request nos. 46 and 47 and denying two of Wife's other requests, the trial court contradicted itself because both sets of requests were based upon the same trial testimony. To the contrary, the trial court was within its discretion to credit some, but not all, of Wife's testimony on these subjects. As the trier of fact, the court was entitled to "accept or reject, in whole or in part, the testimony of any witness or party" and was "not required to believe even uncontroverted evidence." In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009).

For all of the above reasons, we affirm the trial court's decision. Any issue that was raised in a party's notice of appeal, but was not briefed, is deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

9